v.

**STATE of Arkansas, Appellee.**

**No. 10–1201.**

Supreme Court of Arkansas.

June 23, 2011.

Rehearing Denied July 27, 2011.

Dorcy Kyle Corbin, Little Rock, and Cheryl V. Barnard, Arkansas Public Defender Commission, for appellant.

Dustin McDaniel, Att'y Gen., by: John T. Adams, Ass't Att'y Gen., for appellee.

COURTNEY HUDSON HENRY, Justice.

Appellant N.D. appeals two orders denying his motion to dismiss and to declare the juvenile-transfer statute, Arkansas Code Annotated section 9–27–318 (Supp. 2009), unconstitutional and his motion to transfer to juvenile court. For reversal, appellant argues that the circuit court abused its discretion in allowing two witnesses to testify who were not disclosed in discovery; erred in ruling that Arkansas Rule of Evidence 609(d) was inapplicable to the transfer hearing; erred in ruling that Arkansas Code Annotated section 9–27–318 was constitutional; and erred in denying his motion to transfer. Because appellant raises federal and state constitutional questions, we have jurisdiction pursuant to Arkansas Supreme Court Rule 1–2(a)(1), (b)(3) (2011). We reverse the circuit court's order denying appellant's motion to transfer.

## I. *Facts*

In February 2008, appellant was committed to the Department of Youth Services (DYS) for attempted robbery. Appellant was released in October 2008 but returned a second time in February 2009 for probation revocation. In September 2009, appellant was released again. On November 23, 2009, fifteen-year-old appellant was adjudicated delinquent for aggravated robbery and possession of a weapon and was committed a third time to DYS by the Phillips County Circuit Court. Upon his commitment to DYS, appellant was housed in the White County Regional Detention Facility in Batesville and was later transferred to the Jack Jones Juvenile Justice Center in Pine Bluff. During his time at the Pine Bluff facility, appellant and two other juveniles allegedly planned to escape from the detention center. On January 30, 2010, appellant and one juvenile attacked Leonard Wall, a security guard, who later died. The three juveniles left the detention center, ran several blocks, and came upon a nearby gas station, where appellant allegedly stole Gayla Tackett's purse and her coworker's car. On February 1, 2010, appellant was arrested in Fort Smith.

On March 11, 2010, the State filed a felony information in the Jefferson County Circuit Court, charging N.D. with capital murder, escape in the first degree, three counts of aggravated robbery, two counts of theft of property, and second-degree battery. On April 28, 2010, appellant filed a motion for discovery, requesting the court to enter an order requiring the prosecution to produce discovery in sufficient time for the preparation of his defense. The State filed a response to appellant's discovery motion, stating that it had an "open-file policy whereby defense attorneys can inspect the entire case file upon one hour notice up to three days prior to trial."

Appellant also filed a motion to dismiss and to declare Arkansas Code Annotated section 9–27–318(e) (Repl.2009) unconstitu-

tional. In his motion, appellant asserted that the statute violated article 2, section 12 of the Arkansas Constitution by giving the prosecutor the unilateral power "to suspend and set aside laws enacted by the General Assembly"; and usurped this court's constitutional grant of authority to establish the rules of pleading, practice, and procedure pursuant to amendment 80. Appellant also argued that section 9–27–318(e) violated article 4 of the Arkansas Constitution, which requires the separation of powers; article 2, section 3 of the Arkansas Constitution and the Fourteenth Amendment of the United States Constitution under a juvenile's right to equal protection and due process; appellant's right to be free from cruel and unusual punishment, pursuant to article 2, section 9 of the Arkansas Constitution and the Eighth and Fourteenth Amendments of the United States Constitution; and appellant's due-process rights guaranteed by the Fourteenth Amendment of the United States Constitution and article 2, section 8 of the Arkansas Constitution.

Subsequently, appellant filed a motion to dismiss and, alternatively, a motion to transfer to juvenile court. In his motion, appellant reiterated his constitutional challenge to the transfer statute and argued, alternatively, that if the court denied his motion to dismiss, he requested that his case be transferred to juvenile court after considering the factors enumerated in Arkansas Code Annotated section 9–27–318(g) (Repl.2009). The State responded that appellant's case should remain in the adult division of circuit court due to the serious and violent nature of the offenses, the commission of the offenses in an aggressive and violent manner, the offenses being against persons, the level of appellant's participation, and appellant's prior juvenile history.

On June 7, 2010, the circuit court entered an order setting a hearing on the motions. On July 9, 2010, appellant filed a motion to compel discovery and disclosure, seeking compliance with his previous discovery motion. The State did not respond to appellant's motion to compel and did not file an objection to the information requested by appellant.

The circuit court held a hearing on the pending motions, including the motion to transfer, on August 12, 2010. Immediately prior to the hearing, the State filed responses to appellant's motions. At the hearing, defense counsel stated that she received a 954–page discovery packet and argued that she did not have "a single recording that these witnesses gave." In response, the State represented that the only testimony on the motion to transfer would come from the lead investigator, Mickey Buffkin. The State further commented that any recordings of statements were contained in a CD given to the defense. After speaking with the investigator, the State asserted, "We do have a CD that has eleven recorded statements taken of juveniles in the investigation of this matter, and I don't know whether that ended up being provided to the defense or not, but it's here and can be provided to them very quickly and easily." The court stated that the defense "should have had all this stuff months ago" and noted that the motion to transfer needed to be heard within ninety days of the motion-to-transfer date in accordance with Arkansas Code Annotated section 9–27–318(f) (Repl.2009). The court set a deadline of August 18, 2010, for the State to give its information to the defense and rescheduled the transfer hearing for August 26, 2010. The court heard the parties' constitutional arguments and took the issue under advisement.

On August 18, 2010, the day of the discovery deadline, the State filed a response to appellant's motion to compel discovery, alleging that it complied with discovery; that the information requested by appellant was not in possession of the State; and that the information sought by appellant was subject to Arkansas Code Annotated section 9–27–309, which addresses the confidentiality of juvenile records. On this date, the State also hand-delivered a letter to the defense, notifying them of additional discovery being provided by the discovery deadline. That discovery consisted of (1) six discs, which included a recording of a codefendant's statements made during transport, juvenile interviews, a codefendant's statement, appellant's statement, and autopsy photographs; (2) a letter from appellant to his codefendant; (3) a crime-lab report regarding fingerprints; (4) a Pine Bluff Commercial article; (5) an Arkansas Democrat–Gazette article; (6) field notes of police officers; and (7) the criminal history of witnesses that the State may call at trial. In its letter, the State also confirmed that it anticipated calling four witnesses other than those provided by previous discovery.

During the late afternoon before the rescheduled hearing, appellant received a fax from the State containing the names of two additional witnesses. These witnesses included Quantaris Pettis, appellant's cellmate, and Gayla Tackett, the car-theft victim. At the rescheduled transfer hearing on August 26, 2010, appellant objected to the State calling these two last-minute witnesses and argued that the State had violated the court's order by failing to provide a summary of the witnesses' statements and by providing late notice of the other two witnesses, Pettis and Tackett, the day before the hearing. In response, the State maintained that appellant had ample time and opportunity to interview potential witnesses. The State represented to the court that Pettis was an eyewitness and that the defense had a tape recording and transcript of Pettis's statement. The State further argued that the defense had a duty to engage in its own discovery. After hearing arguments from both parties, the circuit court ruled that Pettis could testify but gave the defense time to interview him and "extra latitude" when cross-examining him. The defense also objected to Tackett's testimony. When the circuit court asked if Tackett was included in discovery by the August 18 deadline, the State responded, "They were. In fact, I believe they were on the initial discovery packet as well as any incident reports from the officers who initially responded to the scene." The court further ruled that Tackett could testify and gave the defense "all the latitude you need in your cross-examination."

At the hearing, Dr. Charles Kokes, Medical Examiner at the Arkansas State Crime Laboratory, testified that he performed an autopsy on Wall, the victim, and discovered that Wall suffered a heart attack, but he could not pinpoint the time of the attack. Dr. Kokes also testified that Wall suffered multiple superficial blunt-force injuries and bruising on his body, scalp, face, trunk, and extremities. During the course of the autopsy, Dr. Kokes also discovered that Wall presented with hemorrhages on his face and eyelids, and he stated that these hemorrhages were consistent with strangulation. Dr. Kokes opined that the cause of death included cardiac arrest with complications due to multiple, blunt-force injuries and strangulation.

Dr. Nicholaus Paal, a clinical psychologist at Arkansas Rehabilitation Services, testified that, if appellant were to enter the adult criminal system, he would be surrounded by a new group of peers who were much older, at different levels of

psychosocial development, and would be strongly influenced by them. Dr. Paal opined that appellant had been diagnosed with a conduct disorder and ADHD.

Byron Bishop, DYS services program manager, testified about the DYS services, such as mental-health counseling, available to juveniles in the DYS system. Bishop testified that the November 2009 commitment represented appellant's third time at DYS, and he said that appellant had received treatment for poor impulse control, failing to comply, theft of property, inappropriate sexual behavior, failing to respect the property of others, poor academic progress, resistance to authority, and disturbed family relationships.

Scott Tanner, coordinator of the Juvenile Ombudsman Division, testified about the environment of the juvenile-detention facilities and the services provided in those facilities. Melinda Elliot, operations manager of the 911 center in Jefferson County, testified, and a CD of the 911 call was admitted into evidence. Officer Scott Harrison, detention officer, testified about the layout of the juvenile-detention facilities. Specifically, Officer Harrison testified that appellant lived in Cell B1 and slept in the top bunk while his cellmate, Quantaris Pettis, slept in the bottom bunk.

Lieutenant Steve McFatridge, an officer with the investigation division of the Jefferson County Sheriff's Department, testified that he was present when Pettis gave a statement to police. Lieutenant McFatridge testified that Pettis gave two interviews, and McFatridge was present during the second interview and participated in the interview process. Lieutenant McFatridge also testified that he participated in appellant's interview. According to Lieutenant McFatridge, appellant denied physically assaulting the security officer, but he did admit getting into the automobile at the gas station and leaving the premises.

The defense objected to the witness testimony of Tackett and Pettis. Tackett testified that, in the late evening hours of January 30, 2009, she and her co-worker, John Evans, stopped at the Speedway gas station to get gasoline. She testified that she sat in the passenger seat of Evans's car while Evans went inside. According to Tackett, a guy entered the driver's side, jumped in, put the ignition in reverse, stopped, and told her to get out. At that time, a black male, whom Tackett identified as appellant, "banged" on the passenger side window and told her to get out of the car. Tackett testified that, as she got out of the vehicle, appellant grabbed her purse. At that point, Evans came outside and asked, "What's going on?" Tackett stated that appellant reached his hand into his overalls as if he had a weapon and asked, "Well, what are you going to do about it?" Evans returned to the store, leaving Tackett standing outside, and the three juveniles drove away in Evans's car.

Additionally, Pettis testified over appellant's objection. Pettis testified that he was detained at the juvenile facility in Pine Bluff and lived in the B Pod cell with appellant. Initially, Pettis testified that he did not remember any discussion among the cellmates about a potential escape. However, Pettis later read from a transcript in which he said that appellant beat the security guard. Pettis also testified that, when one juvenile had the officer in a choke hold, appellant searched him for keys and wallet. Pettis also indicated that appellant grabbed the victim's walkie-talkie. Pettis testified that he saw appellant leave with one juvenile while the guard was lying on the floor, unconscious and bleeding.

On August 20, 2010, the circuit court entered an order denying appellant's motion to dismiss and to declare section 9–27–318 unconstitutional. Subsequently, on

August 31, 2010, the circuit court entered an order denying appellant's motion to transfer to juvenile court. Appellant timely filed his notice of appeal.

For the first point on appeal, appellant argues that the circuit court erred in allowing the testimony of Pettis and Tackett at the transfer hearing. Appellant contends that the State failed to comply with discovery and the order of the court and that the admission of these witnesses' testimony resulted in the introduction of highly prejudicial evidence. Appellant asserts that his right to cross-examine these witnesses was substantially impaired because he did not have adequate time to gather information for credibility or impeachment purposes. With regard to Pettis, appellant asserts that the State did not timely notify him of this new witness and that the State did not supply any background information on Pettis. Without any background information on this witness, appellant maintains that he could not properly attack Pettis's credibility. With regard to Tackett, appellant argues that she was not among the witnesses that the State disclosed until the day before the hearing.

Rule 17.1 of the Arkansas Rules of Criminal Procedure (2011) requires the prosecuting attorney to provide to the defense counsel, upon request, certain information and material which is, or may come into, the possession, control, or knowledge of the prosecuting attorney. Specifically, the rule provides in pertinent part:

(a) Subject to the provisions of Rules 17.5 and 19.4, the prosecuting attorney shall disclose to defense counsel, upon timely request, the following material and information which is or may come within the possession, control, or knowledge of the prosecuting attorney:

(i) the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at any hearing or at trial;

. . .

(vi) any record of prior criminal convictions of persons whom the prosecuting attorney intends to call as witnesses at any hearing or at trial, if the prosecuting attorney has such information.

Ark. R.Crim. P. 17.1(a).

It is well settled that the purpose of the discovery rules is to require the State to disclose its evidence to the defendant in time for the defendant to make beneficial use of the information. *Thomas v. State,* 312 Ark. 158, 847 S.W.2d 695 (1993). The standard of review for imposing sanctions for discovery violations is whether there has been an abuse of discretion. *Hicks v. State,* 340 Ark. 605, 12 S.W.3d 219 (2000). This court has said that "the key in determining if a reversible discovery violation exists is whether the appellant was prejudiced by the prosecutor's failure to disclose." *Bray v. State,* 322 Ark. 178, 180, 908 S.W.2d 88, 89 (1995). The burden is on the appellant to prove that the discovery violations were sufficient to undermine the confidence in the outcome of the trial. *Id.* Even if a discovery violation has occurred, this court will not reverse, if the error is harmless. *See, e.g., Mosley v. State,* 323 Ark. 244, 914 S.W.2d 731 (1996).

Noting this precedent, the State argues that appellant did not suffer any prejudice by adding Pettis and Tackett to the witness list immediately prior to the juvenile-transfer hearing. This court has stated that when a prosecution witness's name is not on the witness list as required by Rule 17.1, but the defense has been given a copy of the witness's statement and was on notice that he was a potential witness, there is no reversible error absent a showing of prejudice. *See Davis v. State,* 318

Ark. 212, 885 S.W.2d 292 (1994) (holding that the circuit court's allowing Sheriff Danny Ford to testify when his name was not on the witness list, as required by Rule 17.1, was not prejudicial because the defense had been given a copy of Ford's statement prior to trial and noting that appellant did not claim surprise or prejudice); *Brooks v. State,* 308 Ark. 660, 827 S.W.2d 119 (1992) (holding that the State's failure to list the name of Arkansas State Trooper Ron Ball on its prospective witness list was not reversible error because the report of the state trooper was received by appellant prior to trial and during discovery and noting that appellant failed to show prejudice).

However, *Davis* is distinguishable from the present case for the following reasons. First, unlike the circumstances in *Davis,* the defense did claim surprise and prejudice at the August 26 hearing when confronted with the State's efforts to include the testimony of these |₁₂two witnesses. In the late afternoon before the transfer hearing, the defense received a fax with Pettis and Tackett listed as additional, last-minute witnesses.[1] At the transfer hearing, defense counsel argued that the court ordered the State to comply with discovery by August 18. Further, the defense asserted that the State had ample opportunity to provide a list with these two witnesses and that producing the list the day before the hearing was a "sandbagging" tactic that limited the defense's ability to cross-examine the witnesses. Not only did the defense claim surprise and prejudice during its arguments to the court, but it also made contemporaneous objections when Pettis and Tackett testified.

Second, the State repeatedly, throughout the proceedings, failed to turn over all

discovery, including the names of these two witnesses, to the defense. In April 2010, appellant filed a motion for all discovery, and the State filed a response, articulating its "open-file" policy. During the course of the proceedings, the defense filed a motion for discovery, filed a motion to compel, represented at the August 12 hearing that it still had not received the witnesses' recordings, and was assured by the State that Investigator Buffkin would be the only State witness. The circuit court ordered the State to turn over its additional discovery by August 18. According to the State's August 18 correspondence to the defense, the State anticipated calling four additional witnesses, which did not include Pettis and Tackett. In the August 18 letter, the State asserted, "This completes the State's discovery obligations at this time."

██ |₁₃More significantly, the State blatantly violated Rule 17.1 by refusing to offer these witnesses' names to the defense until 4:32 p.m. or 5:15 p.m. the afternoon before the hearing. The State also violated the circuit court's directive to complete discovery by the August 18 deadline, which was actually an extension granted by the court when the State had not complied by the August 12 hearing. As a result of these violations, the defense did not have time to interview these two key witnesses and should have been afforded more time to conduct an interview on the day of the hearing. Moreover, although the hearing was not a trial or an adjudication, the State's dilatory behavior nevertheless occurred at a pivotal point in the proceedings when the circuit court was deciding the critical issue of whether appellant would be tried as a juvenile or as an adult. Thus, under these circumstances, we con-

---

1. The State represented to the court that it sent the fax at 4:32 p.m. on August 25, 2010, while the defense claimed that it received the fax at 5:15 p.m.

clude that the State's violation of Rule 17.1 and the court's order not only offends notions of fair play but also was highly prejudicial and was not harmless error. Based upon these prejudicial discovery violations, we hold that the circuit court abused its discretion by not excluding the testimony of Pettis and Tackett. Accordingly, we reverse with directions for the circuit court to enter an order transferring appellant's case to juvenile court.

We note that the dissent would affirm because appellant "made no request for a continuance." However, neither party raised the issue of a continuance. This court has been resolute in stating that we will not make a party's argument for that party or raise an issue, sua sponte, unless it involves the circuit court's jurisdiction. *Hanlin v. State*, 356 Ark. 516, 157 S.W.3d 181 (2004).

Because we reverse the circuit court's decision, we will not address the remaining arguments on appeal because to do so would amount to an advisory opinion. This court has made it clear that we will not address a constitutional question if we can resolve the case without doing so. *Solis v. State*, 371 Ark. 590, 269 S.W.3d 352 (2007).

Reversed.

CORBIN, J., not participating.

Special Justice C.C. "CLIFF" GIBSON, III, joins in this opinion.

BROWN, GUNTER, and BAKER, JJ., dissent.

ROBERT L. BROWN, Justice, dissenting.

The majority levies a stark penalty against the State by reversing the decision of the trial judge. The effect of today's decision will be that N.D. will face charges in the juvenile division which will lose jurisdiction over him in about four years, as N.D. is now age seventeen. This is despite the fact that the statements of the two witnesses in dispute were provided to the defense attorney a week prior to the transfer hearing, and the trial judge offered defense counsel an opportunity to talk to the witnesses during the transfer hearing. Because I find insufficient prejudice to N.D. under the process followed by the trial judge and, thus, no abuse of discretion in allowing the witnesses' testimony, I would affirm his decision to deny a transfer of this case to the juvenile division.

The procedural history of this case proves my point. As a result of N.D.'s motion to compel, the trial judge ordered that the State to produce its entire file, including "everything [the State] intends to introduce into evidence at trial," to N.D. by August 18, 2010, one week before the scheduled hearing on his motion to transfer his case to the juvenile division. The judge then said that anything else that came up would be addressed on an "item by item basis." N.D. takes issue with the fact that the State added two additional witnesses, Pettis and Tackett, to the witness list the afternoon before the transfer hearing was scheduled to take place, even though his counsel was given the witnesses' statements a week before the hearing.

The first additional witness, Pettis, was N.D.'s cellmate at the Jack Jones Juvenile Justice Detention Center at the time N.D. allegedly broke out of the facility. The second witness whom N.D. objected to was Tackett, who was in the car that N.D. allegedly stole from a gas station after the escape. At the start of the transfer hearing, N.D. objected to the State's calling Pettis, arguing that the State failed to comply with the motion to compel because it added Pettis to the witness list the after-

noon before the hearing. N.D. also argued that he was deprived of the right to cross-examine Pettis effectively because there was no background information on Pettis in the file. The State responded that there was a statement from Pettis contained in the file given to defense counsel and that one of N.D.'s counsel could speak to Pettis while the hearing was being conducted. N.D.'s counsel admitted that Pettis's statement was in the file but refused the opportunity to speak to him while the hearing was ongoing.

After an objection was made to the testimony of Pettis and Tackett, the trial judge ruled that the testimony was admissible after determining that Pettis's statement was given to ₁₆N.D. in compliance with its earlier orders. In addition, the judge stated, "I'll give you time to interview him or give you extra latitude when you cross-examine him." That was the correct remedy. In the context of criminal trials, this court has ruled that the failure of the State to disclose a witness can be remedied by permitting the defendant to interview the undisclosed witness. *See, e.g., Burton v. State*, 314 Ark. 317, 862 S.W.2d 252 (1993). This case deals merely with a hearing to determine which court had jurisdiction of the case. It was not the trial of a criminal or delinquency charge.[1]

The second witness, Tackett, was also added the day before the transfer hearing. Tackett was in the car that N.D. allegedly stole from a gas station during his flight from the detention center. Her inclusion as a witness can hardly have been a surprise to N.D. Tackett's statement, like Pettis's, was included in the discovery the court ordered the State to produce by August 18, 2010, which was done a week before the hearing. Tackett had been list-

ed on the incident reports and in the criminal information as the victim of the aggravated robbery. After hearing argument from both sides on the ability of Tackett to testify, the trial judge allowed the testimony, finding that Tackett "was disclosed in the discovery," and permitted N.D. "all the latitude you need in your cross-examination." Given that N.D. acknowledged that Tackett's statements had been provided in discovery, this determination was not an abuse of discretion. *See, e.g., Davis v. State*, 318 Ark. 212, 218, 885 S.W.2d 292, 295 (1994) ₁₇(holding that the trial court did not err in permitting a sheriff to testify as a witness despite that fact that his name did not appear on the witness list because the defense had been given a copy of the sheriff's statement and was on notice he was a potential witness).

Both Pettis and Tackett were obvious witnesses for the State, and N.D. has utterly failed to show that either was a surprise to defense counsel because both were disclosed in the court-ordered discovery. Moreover, N.D. fails to show how he was prejudiced by the testimony of Pettis and Tackett, since he had their statements, which were given to law enforcement, for at least a week.

The majority opinion says the State "blatantly violated" Rule 17.1, which requires the prosecutor to provide the names and addresses of all witnesses. The State complied with Rule 17.1. It is telling that defense counsel does not cite Rule 17.1 in its brief on appeal. Is the majority now amending Rule 17.1 to fix a time limit for providing witness names?

The majority also asserts that the State violated the trial judge's directive to comply with discovery by August 18, a week

---

1. The juvenile-transfer hearing is a jurisdictional hearing for the judge to decide which division has jurisdiction—adult criminal division or the juvenile division. It is a special proceeding set by statute at Arkansas Code Annotated section 9–27–318 (Repl.2009).

before the transfer hearing. Not so. The statements of Pettis and Tackett were provided at that time, and defense counsel had ample opportunity to engage in their own investigation of the statements provided one week before the hearing.

The majority also states that the case of *Davis v. State*, 318 Ark. 212, 885 S.W.2d 292 (1994), is inapposite. Again, not so. The *Davis* case stands clearly for the proposition that when a witness's statement is provided to defense counsel, there is no prejudice by the fact that the witness is left off the witness list. That is precisely the situation we have in the case before us.

By today's decision, the majority has usurped the role of the trial judge and applied an exclusionary rule for two state witnesses. Moreover, the majority has claimed that the trial judge, who has lived with this case and managed it, abused his discretion. To the contrary, it appears to me that the trial judge followed our law and fashioned an appropriate remedy.

Because defense counsel had the statements of Pettis and Tackett a week before the juvenile-transfer hearing to decide jurisdiction and because, at the hearing, defense counsel refused to interview the witnesses at the trial judge's suggestion and because defense counsel made no request for a continuance, I would affirm the trial judge's decision to permit the testimony of each witness. Clearly, that decision was not an abuse of discretion. I respectfully dissent.

GUNTER and BAKER, JJ., join this dissent.