v.

**STATE of Arkansas, Appellee.**

**No. 11–1157.**

Supreme Court of Arkansas.

June 14, 2012.

Dorcy Kyle Corbin, Cheryl V. Barnard, Little Rock, for Appellant.

Dustin McDaniel, Atty. Gen., Leann J. Irvin, Asst. Atty. Gen., for Appellee.

ROBERT L. BROWN, Justice.

Appellant N.D. appeals the decision by the Jefferson County Circuit Court, Juvenile Division (juvenile court), that he be designated for extended juvenile jurisdiction (EJJ). He asserts that the Jefferson County Circuit Court, Criminal Division (criminal court) has already declined to make such a designation, and because this court did not reverse that refusal in N.D.'s first appeal, the issue is decided by law of the case. We disagree, and we affirm.

On November 23, 2009, fifteen year old N.D. was adjudicated delinquent for commission of aggravated robbery and possession of a weapon. He was sent to the Department of Youth Services (DYS) by the Phillips County Circuit Court and housed at the White County Regional Detention Facility in Batesville. Later, he was transferred to the Jack Jones Juvenile Justice Center in Pine Bluff. On January 30, 2010, N.D. and one other juvenile allegedly attacked Leonard Wall, a security guard at Jack Jones, who later died of

cardiac arrest. N.D., along with two other juveniles, allegedly left the detention center, ran several blocks, and stole a car and a woman's purse at a nearby gas station. On February 1, 2010, N.D. was arrested in Fort Smith.

On March 11, 2010, the State filed a felony information in the criminal court, charging N.D. as an adult with capital murder, escape in the first degree, three counts of aggravated robbery, two counts of theft of property, and second-degree battery. Prior to his trial, N.D. moved to dismiss the charges against him or, alternatively, to transfer his case to the juvenile court. In that motion, N.D. did not include a request that his case be transferred to the juvenile court with an EJJ designation. The State responded to the motion and contended that N.D.'s case should remain in criminal court due to the serious and violent nature of the offenses, the commission of the offenses in an aggressive and violent manner, the offenses being committed against people, the level of N.D.'s participation, and his prior juvenile history.

On August 12, 2010, the criminal court held a hearing on N.D.'s motion to dismiss his case or, alternatively, transfer it to juvenile court. Because of a discovery dispute, the hearing was rescheduled for August 26, 2010. On that date, the criminal court heard testimony from several witnesses regarding transfer. During that hearing, Scott Tanner, the coordinator for the Juvenile Ombudsman Division, testified about rehabilitation options that would be available to N.D. if the case were sent to juvenile court. Tanner mentioned, among those options, the possibility of EJJ. He testified that under EJJ, the length of detention becomes exponentially longer and that there is greater administrative oversight by the committing court. Tanner added that with an EJJ designa-

tion, N.D. could receive a sentence of life in prison, if convicted of capital or first degree-murder. During cross-examination by the State, Tanner stated that the criminal court could transfer the case with an EJJ designation or that an EJJ sentence could be imposed after the transfer to juvenile court.

During closing argument, N.D.'s counsel made the following statements:

> We have submitted evidence that if the Court were to transfer this to juvenile court that juvenile court could keep him under the juvenile court's jurisdiction for—until he's 21 years old. If the Court were to transfer this as an EJJ case, [N.D.] would not only be under the jurisdiction of the juvenile court until he's 21, if the court at some point determined he was rehabilitated, then he would be put on probation for a period of time.

On August 31, 2010, the criminal court entered an order denying N.D.'s motion to transfer. That order makes no mention of EJJ or of an EJJ designation. In the order, the criminal court concluded, "Having considered the 10 factors required by Ark.Code Ann. § 9–27–318(g), the Court finds that [N.D.] has failed to show by clear and convincing evidence that his case should be transferred to the juvenile division of circuit court."

N.D. appealed the decision denying his transfer, and we reversed the criminal court's denial. *N.D. v. State,* 2011 Ark. 282, 383 S.W.3d 396 (*N.D. I* ). We said, "... we reverse with directions for the circuit court to enter an order transferring [N.D.'s] case to juvenile court." *N.D. I,* 2011 Ark. 282, at 13, 383 S.W.3d 396. Our reversal was based on our conclusion that the State committed a discovery violation by failing to provide the names of witnesses in a timely fashion before the Au-

gust 26, 2010 transfer hearing. This court's opinion makes no mention of EJJ.

After this court's remand, the criminal court entered an order transferring N.D.'s case to juvenile court on July 29, 2011. The juvenile court accepted jurisdiction over N.D.'s case on the same date.[1] On August 4, 2011, the State moved for an EJJ designation in connection with N.D. On August 11, 2011, N.D. responded to the State's motion and claimed that the "points raised by the State have been previously raised in the criminal division of circuit court pursuant to [N.D.'s] request for transfer to juvenile court or for transfer as [EJJ] provided in Ark.Code Ann. § 9–27–318.... The law of the case doctrine prevents a second EJJ designation."

On August 16, 2011, the juvenile court entered an order granting the State's request to proceed with an EJJ hearing. In that order, the juvenile court concluded that under Arkansas Code Annotated section 9–27–306(g), it had jurisdiction over EJJ cases filed by the State under the authority granted by Arkansas Code Annotated section 9–27–501. The juvenile court also concluded that from its review of this court's opinion and the pleadings filed in criminal court, no EJJ hearing had been held before the transfer.

On August 17, 2011, N.D. filed a motion objecting to proceeding with an EJJ hearing. He maintained that in the criminal court hearing held on August 26, 2010, he

had requested that the case be transferred with an EJJ designation as an alternative to transfer to juvenile court with no such designation. He also contended that this court did not order that the case be transferred with an EJJ designation and that such a designation is not within the mandate in his case. This means, he argued, that the EJJ matter was resolved. On August 29, 2011, the juvenile court granted the State's motion for an EJJ designation.

N.D. continues to contend as his principal point on appeal that when the criminal court denied his petition to transfer his case to the juvenile court, it rejected the EJJ designation.[2] Thus, he claims, when this court remanded the case to the criminal court with directions to transfer his case to the juvenile court, and did not mention an EJJ designation, the juvenile court was without authority to conduct a hearing on that issue because it was a matter already decided. N.D. relies primarily on Arkansas Code Annotated section 9–27–318 and section 9–27–501 as the basis for his law-of-the-case argument.

N.D. further contends that when a case originates in criminal court, the EJJ-designation hearing is conducted as part of the transfer hearing contemplated under section 9–27–318. That statute provides that the State may file a motion in the juvenile division of circuit court to transfer a case to the criminal division of circuit court or to designate a juvenile as an EJJ offender

---

1. An amended order accepting jurisdiction was entered by the juvenile division on August 2, 2011.

2. N.D. also contends that if the juvenile court enters an EJJ designation, then his case would be transferred back to the criminal court, in violation of this court's clear order. His contention is incorrect. If the juvenile court finds that the juvenile should be treated as an EJJ offender, the court must enter its written findings and inform the juvenile of his

right to a jury trial and then set a date for the adjudication. Ark.Code Ann. § 9–27–503(d). The statute does not require the juvenile court to transfer the case back to criminal court. In the instant case, the juvenile court's order does not mention a transfer to criminal court. Moreover, N.D.'s reliance on section 9–37–318(i) is misplaced. This is not a case where the EJJ hearing was held in criminal court prior to the transfer to juvenile court, as he claims.

under certain circumstances. Ark.Code Ann. § 9–27–318(b) (Repl.2009). Upon a finding by the criminal court that a juvenile charged with capital murder who is age fourteen through seventeen should be transferred to juvenile court, the criminal court may order that the offender have an EJJ designation. Ark.Code Ann. § 9–27–318(i). The criminal court may, however, conduct a transfer hearing and an EJJ hearing under § 9–27–503 at the same time. Ark.Code. Ann. § 9–27–318(m). This, N.D. argues, is what was done in the instant case.

Accordingly, the issue we must address is whether this court's prior opinion in *N.D. I* operated as a decision on the EJJ question and, hence, became law of the case. Any issue decided by this court in *N.D. I* clearly operates as law of the case for the remand and any subsequent appeal. *See Kemp v. State,* 335 Ark. 139, 983 S.W.2d 383 (1998). That doctrine further prevents an issue raised in a prior appeal from being raised in a subsequent appeal unless the evidence materially varies between the two appeals. *Id.* at 142, 983 S.W.2d at 385. That doctrine also precludes the trial court on remand from considering and deciding questions that were explicitly or implicitly determined on appeal. *Camargo v. State,* 337 Ark. 105, 110, 987 S.W.2d 680, 683 (1999). Questions that have not been decided do not become law of the case merely because they could have been decided; at the same time, law-of-the-case principles are applied when a court concludes that an issue was resolved implicitly despite the lack of any explicit statement. *Id.* Matters that have not been decided explicitly or implicitly do not become law of the case merely because they could have been decided. *Morris v. State,* 358 Ark. 455, 457 n. 1, 193 S.W.3d 243, 245 n. 1 (2004).

N.D. appears to emphasize in his appeal that the criminal court had to have rejected a transfer to juvenile court with an EJJ designation when it refused to transfer the matter in the first place. That though is highly speculative, since no mention of EJJ as alternative relief is made in the criminal court's order refusing the transfer or in this court's opinion directing the transfer. We further emphasize that the criminal court transferred N.D.'s case to juvenile court only after direction from this court in *N.D. I*. Nothing in *N.D. I* suggests that an EJJ designation was an issue before this court, either explicitly or implicitly. The sole issue determined by the court was whether the transfer to juvenile court should be made based on the discovery violations by the State.

It is true that during N.D.'s transfer hearing in criminal court, he elicited testimony from the ombudsman, Scott Tanner, regarding the EJJ process. Moreover, during closing argument, N.D.'s counsel also mentioned that the criminal court could transfer his case with an EJJ designation. But, again, neither the criminal court's order nor this court's opinion in *N.D. I* made reference to EJJ.

In this regard, we reject N.D.'s contention that the State was required to obtain a ruling from the circuit court regarding the EJJ designation. The State, as the prevailing party, was under no obligation to obtain a ruling on an alternative matter such as EJJ status because the State had prevailed and the matter was not initially transferred to juvenile court by the criminal court. *See, e.g., Landers v. Jameson,* 355 Ark. 163, 132 S.W.3d 741 (2003) (holding that the law-of-the-case doctrine does not require a prevailing party to obtain a ruling on an alternative reason to decide the matter in that party's favor); *see also Lofton v. State,* 2009 Ark. 341, at 9, 321 S.W.3d 255, 260 (concluding that when the

circuit court finds that a case should not be transferred to the juvenile division, the circuit court's authority to transfer cases with an EJJ designation under section 9–27–318(i) is inapplicable).

N.D. also looks to section 9–27–318 for support of his contention that the criminal court held an EJJ designation hearing simultaneously with the transfer hearing. Undoubtedly, that statute permits the criminal court to conduct the two hearings, a transfer hearing and an EJJ hearing, simultaneously. *See* Ark.Code Ann. § 9–27–318(m). The statute, however, does not mandate that the hearings be conducted at the same time. The statute merely reads that if the circuit court determines that the case should be transferred to juvenile court, the criminal court may enter an order to transfer it with an EJJ. Ark.Code Ann. § 9–27–318(i). There is nothing in the statute that requires the criminal court to make a decision on the EJJ issue before the case is transferred to juvenile court. Also, to repeat, the transfer to juvenile court was done because of directives from this court in *N.D. I* and not because the criminal court had decided to do so under section 9–27–318(i).

In short, we reject N.D's contention that the law-of-the-case doctrine barred the juvenile court from conducting an EJJ hearing and granting the State's motion for such a designation. We hold that in *N.D. I* this court reached no decision and provided no direction to the criminal court with respect to EJJ designation. We further hold that upon remand the criminal court made no decision regarding EJJ designation. After remand, the criminal court simply transferred the case to the juvenile court pursuant to this court's directive in *N.D. I.*

■ For his next point, N.D. claims that the EJJ designation in this case violates the United States and Arkansas constitutional prohibitions against double jeopardy. Both the Fifth Amendment to the United States Constitution and Article 2, section 8 of the Arkansas Constitution require that no person be twice put in jeopardy of life or liberty for the same offense. N.D. contends that his double-jeopardy rights were violated because he was subject to receiving a life sentence in the criminal court after that court ruled he would be tried as an adult. Because a life sentence for him as an adult was no longer possible after this court transferred the matter to juvenile court without an EJJ designation, he cannot again be subjected to a life sentence as an EJJ designee. According to N.D., when the juvenile court granted the State's motion for an EJJ designation, he was potentially subject to a life sentence, and his liberty, as a result, was twice placed in jeopardy for the same offense.

■ The Double Jeopardy Clause protects criminal defendants from: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Williams v. State,* 371 Ark. 550, 554, 268 S.W.3d 868, 871 (2007). Jeopardy does attach within the meaning of the Fifth Amendment, as applicable to the states under the Fourteenth Amendment, in an adjudicatory delinquency proceeding in juvenile court. *Avery v. State,* 311 Ark. 391, 394, 844 S.W.2d 364, 366 (1993).

As N.D. has not been acquitted or convicted of any of the underlying offenses charged in the delinquency petition, the first two double jeopardy protections are not applicable. To the extent that he claims he could face multiple punishments for the same offenses, his claim must be rejected. As an initial matter, his argument is premature because he has yet to be sentenced or even adjudicated a delin-

quent. Instead, the EJJ designation simply means at this stage that if the juvenile court finds the allegations in the petition are true and adjudicates him to be a delinquent, he may be sentenced to a more strenuous punishment than what is available in juvenile court without such an adjudication. His contention, at this point, is mere speculation.

For his last point, N.D. urges that his due-process rights were violated, but he cites to no law to support this proposition; nor is his argument convincing on this point. This court will not consider an argument that presents no citation to authority or convincing argument. *Kelly v. State,* 350 Ark. 238, 241, 85 S.W.3d 893, 895 (2002).

Affirmed.

CORBIN, J., not participating.