Cite as 2019 Ark. App. 331

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-18-570

|  |  |
|---|---|
|  | **Opinion Delivered** June 5, 2019 |
| JAYLEN LAMARVIN FARMER | APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT |
| APPELLANT | [NO. 18CR-17-518] |
| V. | HONORABLE JOHN N. FOGLEMAN, JUDGE |
| STATE OF ARKANSAS | AFFIRMED |
| APPELLEE | |

## LARRY D. VAUGHT, Judge

Jaylen Lamarvin Farmer appeals the sentencing order entered by the Crittenden County Circuit Court convicting him of one count of attempted capital murder, with an enhancement for employing a firearm; sixteen counts of second-degree unlawful discharge of a firearm from a vehicle, with each count being enhanced for employing a firearm; and one count of fleeing, with an enhancement for employing a firearm. Farmer was sentenced to a total of ninety-six years' imprisonment for these convictions. On appeal, Farmer raises three points: (1) the circuit court erred in denying his motion for mistrial; (2) the circuit court erred in denying his motion for new trial; and (3) there was insufficient evidence corroborating the accomplice testimony to support his convictions. We affirm.

At trial, the evidence established that around 9:30 p.m. on May 19, 2017, patrol officer Cody Gross of the West Memphis Police Department observed a gold Oldsmobile Alero with

three occupants turn into a convenience store. Officer Gross witnessed two of the occupants of the Alero, Farmer and Vondre McClure, standing outside the vehicle at the gas station. When the Alero left the convenience store, the officer followed it. As the vehicle approached speeds of fifty-five to sixty-five miles an hour, Officer Gross turned on his blue lights to initiate a traffic stop. The Alero made an abrupt right turn without applying the brakes, after which someone in the backseat of the Alero pointed an assault rifle out of the window and began firing multiple shots at the officer. One of the bullets struck the passenger-side windshield of Officer Gross's patrol vehicle. Officer Gross stopped his vehicle, and the Alero drove away. Law enforcement officers later found the Alero in a ditch at a dead end still running with the front doors open.

Officer Gross testified that he was familiar with Farmer's vehicle and had assumed, immediately after the incident, that Farmer was driving it when the shots were fired from the backseat. Gross further testified that he could have been mistaken and that he was unable to identify the person who was driving. After reviewing surveillance video from the convenience store, Officer Gross stated that Farmer was wearing a green shirt and a watch and that McClure was wearing a red hooded sweatshirt.[1]

Farmer, McClure, and JK, a minor, were arrested following the incident. Farmer gave an interview to police wherein he stated that the Alero is his vehicle and that he had been driving the vehicle. He said that he was going to pull over for the officer when JK unexpectedly

---

[1]There is no evidence on this record of what JK, the third occupant, was wearing on the night of the incident.

started firing a weapon from the backseat. Farmer denied that either he or McClure shot at the officer. Farmer stated that once he stopped the vehicle, he ran from his car on foot.

McClure testified at trial that JK had been driving the Alero when Farmer, who was in the backseat, fired the assault rifle at Officer Gross. McClure stated that when the officer tried to stop the Alero, Farmer told JK to "go, go." McClure further testified that when JK reached a dead end, all three occupants jumped out of the car and ran away. McClure stated that he met up with Farmer later that night and that Farmer told McClure that JK was going to take the blame as the shooter and for McClure not to "snitch." According to McClure, when he disagreed with Farmer's plan, McClure felt threatened by Farmer. McClure turned himself in to the authorities the next day.

McClure also testified that he had given three interviews to police. In his first two interviews, he said that he had lied and told officers that Farmer was the driver and that JK was in the backseat firing the assault rifle because that is what Farmer told him to say, and he was afraid of Farmer. McClure said that he received seven or eight letters from Farmer while they were both in jail indicating that JK was going to take the blame as the shooter, stating that there was no evidence against Farmer or McClure, and instructing McClure not to "snitch." McClure testified that he requested a third police interview, and on February 2, 2018, he told the police the truth that JK had been driving the Alero and that Farmer was the person who had shot the assault rifle from the backseat.

Harvey Taylor, a sergeant with the West Memphis Police Department, testified that he was skeptical about McClure's third interview, so he conducted a follow-up investigation.

3

Taylor said that he read the letters that Farmer had sent to McClure[2] and listened to a phone call Farmer made from jail to McClure.[3] Sergeant Taylor stated that the letters and the phone call were consistent with McClure's story that JK was taking the blame as the shooter for Farmer. Sergeant Taylor testified that he watched gas-station surveillance video that showed Farmer wearing a shiny watch and McClure wearing a red hoodie. The sergeant also watched Officer Gross's dashcam video that showed the shooter had bare arms and a shiny object on his wrist.[4] Sergeant Taylor testified that after his follow-up investigation, he believed Farmer was in the backseat firing the assault rifle at Officer Gross.

The State also presented evidence that sixteen shell casings from an AK-47 assault rifle were collected at the scene. The parties stipulated that no DNA, fingerprints, or other scientific evidence was found on the shell casings. Seven DNA samples were taken from the Alero. The state crime laboratory tested the samples, and the results were inconclusive.

As set forth above, the jury convicted Farmer. This appeal followed.

Farmer's third argument on appeal challenges the sufficiency of the evidence to support his convictions. Due to double-jeopardy concerns, we are required to review arguments

---

[2]Eight letters from Farmer to McClure were introduced into evidence. In those letters, Farmer informed McClure that JK "took his charges," and if McClure and Farmer would wait nine months, their charges would be dropped because there was no evidence against them. In several letters, Farmer told McClure that he (Farmer) was not going to "snitch" and that McClure should not "snitch." In one letter, Farmer wrote that he had heard McClure was going to "take da stand," and Farmer encouraged McClure not to testify.

[3]In that phone call, Farmer said that JK went to juvenile court and "took the time." Farmer said that if they just waited, they would be out of jail in nine months.

[4]Sergeant Taylor further learned that the Alero's driver's-side automatic window was closed and did not work; therefore, the driver could not have been the shooter.

4

regarding the sufficiency of the evidence first. *Morgan v. State*, 2009 Ark. 257, at 6, 308 S.W.3d 147, 152. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id.*, 308 S.W.3d at 152. We affirm a conviction if substantial evidence exists to support it. *Id.*, 308 S.W.3d at 152. Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*, 308 S.W.3d at 152. Circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.* at 6–7, 308 S.W.3d at 152. Whether the evidence excludes every other hypothesis is left to the jury to decide. *Id.* at 7, 308 S.W.3d at 152. The credibility of witnesses is an issue for the jury and not the court. *Id.*, 308 S.W.3d at 152.

Farmer was convicted of attempted capital murder, sixteen counts of second-degree unlawful discharge of a firearm from a vehicle, and fleeing. A person commits capital murder if, with the premeditated and deliberated purpose of causing the death of any law enforcement officer, the person causes the death of any person. Ark. Code Ann. § 5-10-101(a)(3) (Supp. 2017). A person also commits capital murder if the person purposely discharges a firearm from a vehicle at a person or at a vehicle he or she knows or has good reason to believe to be occupied by a person and thereby causes the death of another person under circumstances manifesting extreme indifference to the value of human life. Ark. Code Ann. § 5-10-101(a)(10). A person commits criminal attempt to commit capital murder if he or she purposely engages in conduct that "[c]onstitutes a substantial step in a course of conduct intended to culminate

in the commission of an offense." Ark. Code Ann. § 5-3-201(a)(2) (Repl. 2013). A person commits unlawful discharge of a firearm from a vehicle in the second degree if he or she recklessly discharges a firearm from a vehicle in a manner that creates a substantial risk of physical injury to another person or property damage to a home, residence, or other occupiable structure. Ark. Code Ann. § 5-74-107(b)(1) (Supp. 2017).

If a person knows that his or her immediate arrest or detention is being attempted by a duly authorized law enforcement officer, it is the lawful duty of the person to refrain from fleeing, either on foot or by means of any vehicle or conveyance. Ark. Code Ann. § 5-54-125(a) (Repl. 2016). Fleeing by means of any vehicle or conveyance is considered a Class D felony if, under circumstances manifesting extreme indifference to the value of human life, a person purposely operates the vehicle or conveyance in such a manner that creates a substantial danger of death or serious physical injury to another person. Ark. Code Ann. § 5-54-125(d)(2). Finally, a person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, the person solicits, advises, encourages, or coerces the other person to commit the offense; or aids, agrees to aid, or attempts to aid the other person in planning or committing the offense. Ark. Code Ann. § 5-2-403(a)(1), (2) (Repl. 2013).

Farmer argues that the circuit court erred in denying his motions for directed verdict because his convictions were based solely on the testimony of codefendant and accomplice McClure. Farmer argues that (1) McClure's testimony is the only evidence that directly implicates him in the offenses for which he was convicted; (2) McClure was an accomplice, and his testimony required corroboration; (3) the State failed to introduce corroborating

6

evidence; and (4) if McClure's testimony is removed, there is no substantial evidence against him to support the convictions.

Arkansas Code Annotated section 16-89-111(e)(1)(A) (Supp. 2017) provides that a conviction may not be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense. With respect to corroborating testimony, this court has held that

> [c]orroborating evidence is not sufficient if it merely shows that the offense was committed and the circumstances thereof. The corroboration must be sufficient, standing alone, to establish the commission of the offense and to connect the defendant with it. Corroborating evidence need not, however, be so substantial in and of itself to sustain a conviction. The test is whether, if the testimony of the accomplice were completely eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. *Martin v. State*, 346 Ark. 198, 57 S.W.3d 136 (2001).

*Vaughan v. State*, 2018 Ark. App. 439, at 6, 555 S.W.3d 922, 926 (citing *Riley v. State*, 2009 Ark. App. 613, at 4, 343 S.W.3d 327, 331).

The State argues that evidence to corroborate McClure's testimony is not required because Farmer failed to demonstrate that McClure was an accomplice. We agree. First, McClure testified that he was merely present in the Alero, and his testimony is unrefuted. Second, the circuit court did not find McClure to be an accomplice at law. Finally, an instruction was given to the jury to allow it to determine whether Farmer was an accomplice,[5] but we have no knowledge of whether the jury did, in fact, make such a determination. *See Gilcrease v. State*, 2009 Ark. 298, at 5, 318 S.W.3d 70, 76; *Bush v. State*, 374 Ark. 506, 509–10,

---

[5]The circuit court instructed the jury pursuant to AMI Crim.2d 403 that if the jury found McClure was an accomplice, his testimony must be corroborated by other evidence tending to connect Farmer with the commission of the offenses.

288 S.W.3d 658, 661 (2008). It is the appellant's burden to prove that a witness is an accomplice whose testimony must be corroborated. *Gilcrease*, 2009 Ark. 298, at 5, 318 S.W.3d at 76; *Bush*, 374 Ark. at 510, 288 S.W.3d at 661. We hold that Farmer has failed to meet his burden that McClure's testimony required corroboration. Accordingly, we further hold that McClure's testimony is substantial evidence supporting Farmer's convictions.

Even were we to assume that McClure was an accomplice, we would conclude that there is independent evidence that tends to connect Farmer with the crimes of attempted capital murder, unlawful discharge of a firearm from a vehicle, and fleeing. Officer Gross testified that when he attempted to conduct a traffic stop of the Alero, the driver drove away at an accelerated rate of speed while someone in the backseat fired an assault rifle multiple times at him. One of the bullets struck Gross's windshield. Sixteen shell casings were found at the scene. It was undisputed that Farmer owned the Alero. The officer also testified that he had seen Farmer and McClure at a convenience store standing near the Alero just before the shooting. Officer Gross saw Farmer wearing a green shirt and a watch and saw McClure wearing a red hoodie. Sergeant Taylor testified that surveillance and dashcam videos revealed that there was a watch on the shooter's bare arm. The jury could have found that Farmer's letters and phone call to McClure were attempts to prevent him from telling the truth about Farmer's being the shooter. Sergeant Taylor testified that Farmer's letters and call to McClure were consistent with McClure's testimony that Farmer was the shooter. Finally, the jury could have found that Farmer's actions in firing the assault rifle at Officer Gross and telling JK to "go, go" aided and encouraged JK—the driver of the Alero—in fleeing from the officer. Therefore, assuming evidence corroborating McClure's testimony was required, we hold that

8

there is evidence in this case that tends to connect Farmer with the commission of attempted capital murder, sixteen counts of unlawful discharge of a firearm from a vehicle, and fleeing.

Farmer's next point on appeal is that the circuit court erred in denying his motion for mistrial. A mistrial is an extreme and drastic remedy that will be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing with the trial or when fundamental fairness of the trial has been manifestly affected. *McClinton v. State*, 2015 Ark. 245, at 2, 464 S.W.3d 913, 914. Declaring a mistrial is proper only when the error is beyond repair and cannot be corrected by any curative relief. *Id.* at 2–3, 464 S.W.3d at 914. The judge presiding at trial is in a better position than anyone else to evaluate the impact of any alleged errors. *Id.* at 3, 464 S.W.3d at 914. Therefore, the circuit court has wide discretion in granting or denying a motion for mistrial, and the decision of the circuit court will not be reversed except for abuse of that discretion or manifest prejudice to the complaining party. *Id.*, 464 S.W.3d at 914–15.

At trial, the State introduced into evidence sixteen shell casings recovered at the scene of the crime. The State sought to introduce two live rounds similar to the type found at the scene. Farmer objected, and the circuit court sustained the objection. After the parties had rested and the court had instructed the jury, the following colloquy occurred at the bench:

| | |
|---|---|
| DEFENSE COUNSEL: | Your Honor, let me tell you, I'd like to play it fair and I'm going to play it fair, but why is [the prosecutor] sitting up there with them live bullets on his desk that we have dealt with? Now I'm asking for a – |
| COURT: | Those need to be gone. |
| DEFENSE COUNSEL: | I am asking for a mistrial right now. I'm asking for a mistrial. |

COURT: Your request for a mistrial will be denied. I don't think the mere presence of those is sufficiently prejudicial to go as far as a mistrial, so I'm denying the motion for mistrial. But get rid of them.

Farmer argues on appeal that the circuit court abused its discretion in denying his motion for mistrial. He contends that the State improperly attempted to influence the jury with an open display of live rounds that had previously been ruled inadmissible. He argues that the circuit court must have believed that the live rounds were prejudicial because it instructed the State to "get rid of them." Farmer also argues that the circuit court abused its discretion in refusing to issue a curative instruction to the jury.

There is no evidence in this case that the State's motive was to influence the jury with the live rounds on its table or that the jury even saw the live rounds. In denying the motion for mistrial, the circuit court found that Farmer did not suffer prejudice as a result of the live rounds being on the State's table. The circuit court is in a better position to determine whether a remark prejudiced the jury. *Neal v. State*, 2016 Ark. App. 384, at 9, 499 S.W.3d 254, 260. Accordingly, we hold that the court did not abuse its discretion in denying Farmer's motion for mistrial.

Moreover, Farmer did not request an admonition to the jury. His failure to do so, when such an admonition could have cured any prejudice from the allegedly improper statement, or in this case conduct or display, precludes relief on appeal. *Howard v. State*, 2011 Ark. App. 573, at 18, 386 S.W.3d 106, 117 (citing *Weaver v. State*, 324 Ark. 290, 300, 920 S.W.2d 491, 496 (1996) ("When there is doubt as to whether the circuit court abused its discretion, a failure to

10

request an admonition will negate a mistrial motion."). We hold that the circuit court did not abuse its discretion in denying the motion for mistrial.

Farmer next argues that the circuit court erred in denying his motion for new trial. Under this point, Farmer raises four subpoints. The first is that he is entitled to a new trial because the circuit court violated his right to an impartial jury. He contends that only sixty-two of the 308 individuals summoned for jury duty appeared for his trial and that, of those sixty-two individuals, less than 15 percent were African American. Farmer is African American, and he argues his jury was unrepresentative of the racial makeup of Crittenden County, which is over 60 percent African American.

We cannot reach the merits of the jury-panel subpoint. The sentencing order was entered on March 16, 2018. Thereafter, Farmer filed a motion for new trial, and he amended this pleading four times. One of the arguments—made for the first time in the posttrial motions—was the jury issue. On April 13, the circuit court entered an order denying the motion. Later that same day, Farmer filed a notice of appeal of the March 16 sentencing order. Four days later, on April 17, Farmer filed an amended notice of appeal of the March 16 sentencing order.[6] Neither the original nor amended notice of appeal mentions the April 13 order denying the motion for new trial.

A notice of appeal must identify the order appealed, and orders not mentioned in a notice of appeal are not properly before the appellate court. *Ramsey v. State*, 2010 Ark. App. 601, at 1–2 (citing *McDonald v. State*, 356 Ark. 106, 146 S.W.3d 883 (2004); *Rawe v. Rawe*, 100

---

[6]The amended notice of appeal is identical to the original notice except for the word "amended" in the title of the pleading.

Ark. App. 90, 264 S.W.3d 549 (2007); *Daniel v. State*, 64 Ark. App. 98, 983 S.W.2d 146 (1998)). Because the notices of appeal do not reference the order denying Farmer's motion for a new trial—the only occasion on which Farmer raised the jury-panel issue—the notices are not sufficient to effect an appeal from the denial of the motion. *Id.* at 2; *see also Miller v. State*, 2018 Ark. App. 614, at 13–14, 567 S.W.3d 68, 77.

Likewise, we cannot reach the merits of Farmer's second subpoint within his argument that the circuit court erred in denying his motion for new trial. In this second subpoint, Farmer argues that the circuit court erred in convicting him of more than one count of unlawful discharge of a firearm because it was conduct constituting one continuous event. However, the first and only time Farmer raised this issue was in posttrial motions. As set forth above, Farmer's original and amended notices of appeal do not reference the order denying his motion for a new trial; therefore, the notices are not sufficient to effect an appeal from the order denying the motion. *Ramsey*, 2010 Ark. App. 601, at 1–2.

Farmer's third subpoint under his argument that the circuit court erred in denying his motion for new trial is that the circuit court abused its discretion in denying his motion for a continuance. We are able to address this subpoint because it was not raised for the first time in posttrial motions; it was raised and ruled on prior to trial. *Id.* Nevertheless, we cannot reach the merits of Farmer's motion-for-continuance argument for a different reason.

Farmer filed a motion for continuance on March 12, 2018, two days before trial. The circuit court held a hearing on Farmer's motion that same day and denied the motion. In Farmer's first attempt in appealing this case, we ordered rebriefing due to an insufficient abstract under Arkansas Supreme Court Rule 4-2(a)(5). *Farmer v. State*, 2019 Ark. App. 93, 569

12

S.W.3d 376. We expressly directed Farmer to supplement the abstract with the contents of the motion-for-continuance hearing.[7] However, Farmer's supplemental abstract does not include an abstract of the parties' arguments or the court's ruling from the motion-for-continuance hearing. As we stated in *Farmer*, 2019 Ark. App. 93, at 2, 569 S.W.3d at 377, this information is essential for the appellate court to decide Farmer's argument on appeal that the circuit court abused its discretion in denying the motion. Ark. Sup. Ct. R. 4-2(a)(5) (2018). We cannot review the issue without it. Despite the opportunity to supplement the abstract with the required information, it has not been provided.

Arkansas Supreme Court Rule 4-2(b)(3) provides that this court may automatically affirm a judgment or conviction when the appellant has had the opportunity to cure his or her deficient brief and fails. *Patrick v. State*, 359 Ark. 504, 505, 199 S.W.3d 74, 75 (2004) (affirming a conviction under Rule 4-2(b)(3) for noncompliance with Rule 4-2(a)(5) & (8), stating counsel had his one additional chance to comply and still failed to do so). Due to Farmer's failure to cure the deficiency despite the opportunity to do so, we do not reach the merits of Farmer's arguments related to the circuit court's denial of his motion for continuance.

Farmer's fourth and final subpoint under his argument that the circuit court erred in denying his motion for new trial is that the circuit court erred in finding that the State had complied with its discovery obligations. While the notices of appeal are not sufficient to effect an appeal of this issue from the denial of the posttrial motion, we are able to address this particular subpoint because it was not raised for the first time in posttrial motions—it was

---

[7]In *Farmer*, *supra*, we discussed three other briefing deficiencies, and Farmer's supplemental abstract and addendum have corrected those deficiencies.

raised and ruled on prior to trial in a motion to exclude evidence. *Ramsey*, 2010 Ark. App. 601, at 2.

On March 9, 2018, the circuit court held a hearing on Farmer's motion to exclude evidence. Counsel for Farmer argued that he did not learn of McClure's February 2 statement that implicated Farmer until February 26; that he had just received CDs of the recorded jail calls, and there were too many for him to listen to before trial; and that he received a supplemental crime-lab report from the State on March 8. Counsel argued that his client was prejudiced by the State's delay in tendering this discovery and asked that the evidence be excluded.

In response, the State argued that it had turned over its entire file to Farmer's counsel on January 15, 2018, which included police reports, crime-lab reports, and a CD of phone calls made by Farmer while in jail. The State argued that it advised defense counsel of McClure's third statement and a new jail call by Farmer on February 26, and on March 1, the State mailed defense counsel copies of the third statement and a CD of three new phone calls made by Farmer. Regarding the supplemental crime-lab report, the State explained that on Sunday, it had learned that two swabs from the Alero that had been sent to the crime lab were inadvertently sent back to the police department untested. The samples were rushed to the lab on Tuesday, the results were provided to the State on Thursday, and the State provided the results to the defense that same day. The State further argued that all the crime-lab results, including those in the supplemental report, were inconclusive. The circuit court denied Farmer's motion to exclude the evidence.

14

On appeal, Farmer argues that the State's delay in providing discovery violated Arkansas Rule of Criminal Procedure 17.1. Rule 17.1 requires the prosecuting attorney to provide to the defense counsel, upon request, certain information and material which is, or may come into, the possession, control, or knowledge of the prosecuting attorney. Ark. R. Crim. P. 17.1(a) (2018). It is well settled that the purpose of the discovery rules is to require the State to disclose its evidence to the defendant in time for the defendant to make beneficial use of the information. *N.D. v. State*, 2011 Ark. 282, at 10, 383 S.W.3d 396, 401. The standard of review for imposing sanctions for discovery violations is whether there has been an abuse of discretion. *Id.* at 10, 383 S.W.3d at 401. Our supreme court has said that "the key in determining if a reversible discovery violation exists is whether the appellant was prejudiced by the prosecutor's failure to disclose." *Id.* at 10–11, 383 S.W.3d at 401. The burden is on the appellant to prove that the discovery violations were sufficient to undermine the confidence in the outcome of the trial. *Id.* at 11, 383 S.W.3d at 401.

We cannot reach the merits of Farmer's arguments regarding two of the three categories of evidence to which he objects. McClure's third statement was not introduced at trial, and the CD of three phone calls is not in the addendum or the supplemental addendum. Without this evidence, we cannot determine whether the circuit court abused its discretion in denying Farmer's motion to exclude it. In *Farmer*, 2019 Ark. App. 93, at 4, 569 S.W.3d at 378, we specifically stated that counsel was encouraged to review Rule 4-2 to ensure that the supplemental abstract and addendum comply with the rule and that no additional deficiencies are present. Counsel has failed in this regard.

On the merits of the third piece of evidence to which Farmer objects—the supplemental crime-lab report—we hold that the circuit court did not abuse its discretion in denying his motion to exclude this evidence. The record shows that the State explained why the supplemental crime-lab testing was delayed and necessary, and the supplemental crime-lab report was provided to Farmer within two days of the State's receipt. Moreover, Farmer cannot establish that he was prejudiced by the ruling regarding this evidence. All the DNA testing was inconclusive—it excluded Farmer, McClure, and JK. Farmer contends that he was denied time to conduct his own testing to establish that McClure was the shooter based on a blood stain found in the backseat; however, the record reveals that on January 15, Farmer had possession of the crime-lab report that confirmed that the DNA of Farmer, McClure, and JK did not match that stain. Accordingly, we hold that the circuit court did not abuse its discretion in denying Farmer's motion to exclude the supplemental crime-lab report.

Affirmed.

KLAPPENBACH and WHITEAKER, JJ., agree.

*Roy C. Lewellen*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.