BOARD OF COMMISSIONERS OF RED RIVER BRIDGE DISTRICT *v*. WOOD.

*Shaver, Shaver & Williams* and *Jones & Jones,* for appellant.

*Henry Moore, Jr.,* for appellee.

MEHAFFY, J. The Legislature, at its session in 1917, passed an act to create the Red River Bridge District. The act fixed the boundary of said district, and it was organized for the purpose of constructing and maintaining a free public bridge across the Red River at some point within the limits of the district. The act provided that the commissioners might grant a right-of-way over said bridge to any public utility provided that the concession granted to public utilities should not interfere essentially with the use of such bridge as a public highway.

The act provided for the appointment of assessors, and that said assessors should proceed to assess the value of the benefits accruing to each piece of real property within the district, etc., and provided that they must adjust the burden of assessment to the benefits that would accrue to the property. The act also provided that the commissioners might issue bonds for an amount not to exceed the estimated cost of the work, which bonds should

bear a rate of interest not exceeding 6 per cent. and should not be sold for less than par, unless by unanimous vote of the board. To secure the payment of said bonds, the board was authorized to pledge and mortgage its assessment of benefits. It was also provided in the act that the assessment should be a charge and a lien against all real estate in the said district from the date of the resolution adopted by the board of commissioners, and should be entitled to preference over all judgments, executions, incumbrances, or other liens whatsoever, and shall continue until such assessments with any penalties and costs shall be paid.

It was further provided that all bonds issued by the commissioners under the terms of the act shall be secured by lien on all property subject to taxation, and that the making of said assessments, levy and collection, might be enforced by mandamus.

In 1920 the Legislature amended act 16 of the Acts of 1917, stating that the district was organized for the purpose of constructing and maintaining a toll bridge across Red River at some point within the limits of the district. Said act authorized the commissioners to charge tolls and to grant a right-of-way over said bridge to public utilities. The commissioners were authorized to establish and fix rates of toll not exceeding the rates named in the act, and it was expressly provided that all tolls collected shall be for the benefit of the district. The commissioners were required to keep or cause to be kept accurate records of all tolls collected and account therefor in the same manner they are now required by law to account for other funds received by said district from any other source.

The bridge was built across Red River at, or near, Index, in the counties of Miller and Little River, and taxes or assessments, as provided for in the original act, were collected during the years 1917-1924, inclusive, and the assessments so collected were used in paying on bonds issued to build said bridge, and interest.

Since the year 1925, no assessments have been collected under the assessment of benefits levied, but funds have been received from tolls collected, and said funds have been used in paying the expenses of the bridge in retiring the bonds and paying interest. There has been accumulated from said tolls, and is now on hand with the treasurer of the bridge district, approximately $170,000.

During the years 1917-1924, inclusive, approximately $112,000 of assessments were collected on lands in Miller County, and $37,000 on lands in Little River County.

The Legislature in 1931 passed an act authorizing and directing the board of commissioners of the Red River Bridge District to repay all persons the taxes or assessments paid by them on lands situated within the improvement district. The payments were to be made to persons who paid the assessments. The preamble of the act passed in 1931, among other things, stated that assessments were levied and collected for several years, and that since the year 1921 tolls have been collected for traffic across the bridge, and that for the last few years it had not been necessary to collect taxes against lands within the district for the reason that the tolls collected paid all maturing bonds, interest and expenses, and in addition thereto has accumulated a large sum of money in the hands of the commissioners of the district, and that it was found advisable to use such toll funds as may be necessary to repay those who paid taxes or assessments.

Section 4 of the act of 1931 provided: "By reason of the depression that exists in said counties and the great need of funds on the part of property owners to pay taxes, and for other purposes, and in order to preserve the public peace, health and safety, an emergency is hereby declared to exist, and this act shall take effect and be in full force from and after its passage."

This action was begun by appellees in the Miller Chancery Court for an injunction restraining appellants from issuing vouchers or paying any funds belonging to the bridge district to any taxpayers as a refund for taxes

paid on assessments of benefits levied against the lands and real estate in said district.

The complaint alleged the formation of the district under the act of 1917, and that said act was amended as above set forth, in 1920, and that there had been accumulated from tolls approximately $170,000. It was alleged that the plaintiffs were citizens and taxpayers of Little River County and Miller County, and as such citizens and taxpayers, paid taxes during the years from 1917-1924, inclusive, on the assessment of benefits against their lands within said district to build the bridge, and they further alleged that they bring this suit on behalf of themselves and in a representative capacity on behalf of all other citizens and taxpayers in the Red River district, and that the number of such citizens and taxpayers represented by the plaintiffs were several thousand persons.

It was alleged that the act of 1931 is a local or special act, and is contrary to the amendment to the Constitution, that the act is unconstitutional, illegal and void; that the defendants were preparing to receive and pay claims under the act of 1931; that the plaintiffs are interested in having said bridge become a free bridge at the earliest possible time, and they are entitled to have the funds of said bridge district used for the purpose for which they have been collected.

It was also alleged that they had no adequate remedy at law.

The appellants filed a demurrer and answer, the demurrer alleging: (1), that the court had no jurisdiction of the subject of the action; (2), that the plaintiffs have not legal capacity to sue, and have not legal capacity to bring and maintain this action; (3), that the complaint does not state facts sufficient to constitute a cause of action; (4), that the complaint does not state facts sufficient to entitle plaintiffs to the relief asked, and, (5), that the act of the Legislature mentioned is not a local or special act and is not in violation of the Constitution.

The answer filed expressly reserved all the rights under the demurrer and alleged that the building of the bridge at an approximate cost of $375,000, the assessment of benefits, the issuing of bonds, the amendment to the act of 1917 authorizing the collection of tolls and fixing the rates, that taxes were collected during 1917 to 1924, inclusive, amounting to approximately $170,000; that the commissioners had paid all obligations of the district, including maturing bonds and accrued interest, as the same became due; had purchased $35,000 worth of unmatured bonds; that the bonds now outstanding and unpaid amount to $169,500, which mature in different amounts annually up to and including 1931; that the district now has on hand cash, deposited in banks, amounting to $175,-631.84; that the annual tolls collected have been $60,-739.60 in 1928, to $80,108.95 in 1930; and that it is the belief that they will average in the future as much as they have in the past years.

They alleged that all the bonds could be paid within the next three years, and, in addition to these things, alleged as a further reason for the passage of the act of 1931, successive crop failures; that the people were impoverished, unable to maintain themselves and plant their crops; and there was great depression in the counties of Miller and Little River, and great need of funds. The answer denied the allegations in the complaint as to there being citizens and as to there being several thousand people in the district.

It was further alleged that 85 per cent. of the taxpayers in Miller County, within said district, are in favor of the refund of taxes as provided for in the act; that 90 per cent. of the tolls charged and collected come from automobiles and light trucks crossing the bridge, and that 75 per cent. of the tolls are paid by people who do not live in the district and contribute nothing to the building or payment of said bridge. It was admitted that they were preparing to receive and pay claims.

A demurrer was interposed to the answer setting up several grounds, but, as attention will be called to these

grounds in the opinion, it is not necessary to set them out in full here. The court granted a restraining order as prayed, and the case is here on appeal.

This case, as stated by the appellants, involved the constitutionality of an act of the General Assembly passed at its 1931 session. That act provided for the repayment to persons who had paid assessments in the Red River Bridge District in Miller and Little River counties and for nothing else. If this is a special or local law, it violates Amendment No. 12 of the Constitution, which reads as follows: "The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts."

This court has uniformly held that the Constitution of the State is not a grant but a limitation of power; and, unless the power of the Legislature is limited, either expressly or by necessary implication, its power is supreme.

A statute passed by the Legislature will always be upheld unless it is clearly prohibited by the Constitution. If it is doubtful whether the act comes within the limitation of the Constitution, the doubt will be resolved in favor of the constitutionality of the act. *Cobb* v. *Parnell, ante* p. 429; *State* v. *Crowe,* 130 Ark. 272, 197 S. W. 4; *Bush* v. *Martineau,* 174 Ark. 214, 295 S. W. 9.

Whether a statute is constitutional or not is a question of power, a question whether the Legislature, in this particular case, was within the constitutional limits and observed the constitutional conditions; in other words, the question in this case is whether the act of 1931 is prohibited by amendment No. 12 to the Constitution. We have nothing to do with the policy of the law, nor whether the power, if it existed, was exercised properly.

Courts must assume that legislative discretion has been properly exercised. *State* v. *Crowe,* 130 Ark. 272, 197 S. W. 4; *McAdams* v. *Henley,* 169 Ark. 97, 273 S. W. 355.

The act of the Legislature here involved is in no sense a general law. It involves only the tolls collected by the Red River Bridge District and provided for the

repayment of assessments to persons who had paid the assessments on lands within the improvement district.

The act of 1917 creating the Red River Bridge District is a special act, and no one contends otherwise. It provides merely for the creation of the bridge district, the assessment of benefits to pay for the bridge, and for the building of the bridge. The act of 1920, amending the act of 1917, is purely a local act, and it is not contended that either of these acts were general acts. Both of them were passed by the Legislature, however, before the adoption of the amendment No. 12, and at a time when the Constitution did not prohibit the passage of local or special acts.

A general law must relate to persons and things as a class, and must operate throughout the State upon the whole subject or class, and must not be restricted to any particular locality within the State, and, of course, if this is not a general law, it necessarily follows that it is a local or special law. *Ark-Ash Lbr. Co.* v. *Pride & Fairley*, 162 Ark. 241, 258 S. W. 235; *McLaughlin* v. *Ford*, 168 Ark. 1112, 273 S. W. 707; *Farrelly Lake Levee Dist.* v. *Hudson*, 169 Ark. 37, 273 S. W. 711; *Webb* v. *Adams*, 180 Ark. 716, 23 S. W. (2d) 617; *Simpson* v. *Teftler*, 176 Ark. 1106, 24 S. W. (2d) 330; *Skelly Oil Co.* v. *Murphy*, 180 Ark. 1023, 24 S. W. (2d) 314; *Smalley* v. *Bushmaier*, 181 Ark. 847, 28 S. W. (2d) 61.

The rule requiring courts to uphold the statute, if there is any doubt as to whether the power of the Legislature exists under the Constitution, does not authorize the court to read words into the statute even to save its constitutionality. If the statute does not violate the Constitution, or if there is any doubt about whether it does or not, it is the duty of the court to uphold the statute, but if there is no doubt about the statute being in conflict with the Constitution, then it is the duty of the court to uphold the Constitution and declare the act void, and it is only in cases where the language of the act will bear two constructions that the court is justified in adopting

a construction that will sustain rather than one which will defeat it. 25 R. C. L. 1002.

The act involved here is plain and unambiguous. There is no way in which it can be construed by the court so as not to be in violation of the Constitution.

"If the words embody a definite meaning which involve no ambiguity, and there is no contradiction between different parts of the same writing, then the meaning apparent on the face of the instrument is the one which alone we are at liberty to say was intended to be conveyed. In such a case there is no room for construction. That which the words declare is the meaning of the instrument; and neither courts nor Legislatures have a right to add to or take away from that meaning." *Lybrand* v. *Wofford,* 174 Ark. 303, 296 S. W. 729.

It is contended by appellants that the amendment to the Constitution does not prohibit the passage of all and every kind of special or local laws, and they call attention to the case of *Webb* v. *Adams,* 180 Ark. 713, 23 S. W. (2d) 617. This court in the above case held that the act there involved was a local or special act.

The Constitution does prohibit the passage of all and every kind of special or local laws that are special or local in a constitutional sense. The act involved here is clearly in violation of the amendment to the Constitution. The act under consideration does not apply to all toll bridges nor to all of a class, but is specifically limited in its application to the Red River Bridge District. To hold that an act of this kind might be passed by the Legislature would not be a construction of the constitutional provision, but it would be abrogating it or ignoring it. There is no escape from the conclusion that the act is in violation of Amendment No. 12 of the Constitution.

It is next contended that the repayment of these assessments is the discharge of a moral obligation, and does not come within the inhibition of the amendment. A complete answer to this contention is that the law creating the improvement district and authorizing the

building of the bridge and assessment of benefits does not authorize the collection of any assessment of benefits from any person, except where the benefit to the land is equal to or greater than the amount of the assessment. In other words, it must appear that the property is benefited, and the assessment pays for that benefit, so that whoever pays an assessment must receive a benefit at least equal to the amount he pays. If he has received benefits for all that he paid, how can it be said that there is any moral obligation to repay?

But if there were a moral obligation on the bridge district to pay, this would not authorize or justify the passage of a local or special law in violation of the Constitution? The Constitution does not prohibit local legislation, but amendment No. 5▮ expressly authorizes local legislation. What the Constitution does do, however, by express provision, is to prohibit the Legislature from passing any local or special act.

Therefore, if there was a moral obligation on the district to repay the assessments to the taxpayers, it could be done by a general law.

The act of 1931 does not deal with the sovereign administrative power of the State, but it is a local law dealing with the local affairs of the district.

It is contended that the power to tax is an attribute of sovereignty. This is true, but it does not follow, because the power to tax is an attribute of sovereignty, that the Legislature can pass a special act distributing taxes or assessments, or repay them to the taxpayers.

It is next contended by the appellants that the commissioners of the bridge district have authority to repay the taxes independently of the authority conferred upon them by the act of 1931. Whether this is true or not, it is not necessary to decide because it could not do so until it had paid all of its legal obligations. The act creating the district provides for the assessment and collection of taxes and provides that the district may issue bonds and pledge and mortgage the assessments of benefits. These

assessments, when collected, were for the purpose of paying the obligations of the district contracted under the authority of the act of 1917. The act of 1920, providing for the collection of tolls for the use of said bridge, expressly provides that all tolls collected should be for the benefit of the district, and it also required the commissioners to account for the tolls collected in the same manner that they were required to account for the assessments or other funds received by the district. If the tolls collected were insufficient for any reason, to discharge the obligations of the district created under authority of the act of 1917, assessment and collection of benefits would be required for the purpose of discharging such obligations.

It is also contended by the appellants that, if the act of 1931 is a special act, the Legislature had a right to pass it because it amends act 178 of the Acts of 1920. It is not and does not purport to be an amendment of that act. It is an independent act for the purpose of repaying assessments, and for no other purpose. The court has never held that the Legislature had authority to amend a special act. It has held that, since authority is given in the constitutional amendment to repeal a special act, it may repeal a part of a special act, but it did not hold that it had authority to amend a special act.

The appellants contend that the appellees are not toll payers, have suffered no special injury, and have no vested interest, and therefore have no right to maintain this suit. They are citizens and taxpayers in the district, and, if the money received from tolls was used for any purpose other than the payment of the indebtedness of the district, such indebtedness would have to be paid by assessments on their lands. They are therefore interested in having the money used for the purpose of paying the debts of the district and a right to maintain suit for that purpose.

The decree of the chancery court is affirmed.