2012 Ark. 266

CLINICAL STUDY CENTERS, INC.,
John M. Giblin, M.D., Anthony John-
son, M.D., and Gordon Gibson, M.D.,
Appellants

v.

Samuel BOELLNER, M.D.,
and Marilyn Boellner,
Appellees.

No. 11–1225.

Supreme Court of Arkansas.

June 14, 2012.

Charles A. Banks, Robert W. Francis, Banks Law Firm, P.L.L.C., Little Rock, for Appellants.

David L. Williams, Katherine M. Hingtgen, Kutak Rock LLP, Little Rock, for Appellees.

ROBERT L. BROWN, Justice.

Appellants Clinical Study Centers, LLC (CSC); John Giblin, M.D.; Anthony Johnson, M.D.; and Gordon Gibson, M.D. (collectively referred to as appellants), present one point on appeal. That point is whether the Individual Retirement Account (IRA) Statute contravenes the Arkansas Constitution. The circuit court held that the statute was constitutional. We affirm.

This case originated as an action by the appellants against appellees Samuel Boellner, M.D., and Marilyn Boellner. The appellants sued, alleging (1) breaches of contract for a covenant not to compete, a nonsolicitation agreement, and a confidentiality agreement; (2) tortious interference with business expectancy; (3) defamation; and (4) injunctive relief. The Boellners counterclaimed for breach of contract, wrongful termination, and declaratory judgment on the noncompete agreement.

A jury returned the following awards: (1) $325,000 to CSC, Giblin, Johnson, and Gibson for breach of contract against Samuel Boellner; (2) $325,000 to CSC, Giblin, Johnson, and Gibson for tortious interference with business expectancy against Samuel and Marilyn Boellner; (3) $325,000 in punitive damages for tortious interference with business expectancy to CSC, Giblin, Johnson, and Gibson against Samuel Boellner; (4) $75,600 in compensatory damages for defamation to Giblin against Samuel Boellner; and (5) $250,000 in punitive damages for defamation to Giblin against Samuel Boellner. The jury also returned verdicts in favor of Samuel Boellner in the amount of $403,696.04. Judg-

ment was entered on July 21, 2009. This court affirmed the judgment. *Boellner v. Clinical Study Ctrs.*, 2011 Ark. 83, 378 S.W.3d 745 (*Boellner I* ).

In *Boellner I*, the appellants filed a cross-appeal contending that section 16–66–220(a)(1) conflicted with article 9, section 2 of the Arkansas Constitution with respect to an IRA owned by Samuel Boellner. Although there was a ruling from the bench that the statute was constitutional, this court refused to reach the merits of the cross-appeal because the circuit court's order simply stated that "the IRA account is 'exempt from attachment, garnishment, and execution' under the provisions of section 16–66–220(a)(1) and … made no ruling on the constitutionality of section 16–66–220(a)(1)." *Boellner I*, 2011 Ark. 83, at 23, 378 S.W.3d 745. As a result, this court affirmed the circuit court's order that the particular IRA account, owned by Dr. Boellner and held by Raymond James, was not subject to garnishment.

Following our affirmance, the appellants caused a writ of garnishment to be issued to Dillard's Federal Credit Union to reach assets of Marilyn Boellner held in an IRA account. The Boellners' answered that this account was exempt from garnishment under Arkansas Code Annotated section 16–66–220(a)(1) (Repl.2005). In response, the appellants moved to declare section 16–66–220(a)(1) unconstitutional. In their motion, the appellants contended that the exemption provided in that statute conflicted with article 9, section 2 of the Arkansas Constitution because the statute provides a personal-property exemption in excess of the $500–personal–property exemption referred to in the constitution.

The court then entered a written order on September 9, 2011, denying the appellants motion, which read in part:

1. Ark.Code Ann. § 16–66–220 is Constitutional.

2. Ark.Code Ann. § 16–66–220 states that "A person's right to the assets held in or to receive payments, whether vested or not, under a pension, profit-sharing, or similar plan or contract, including a retirement plan for self-employed individuals, or under an individual retirement account or an individual retirement annuity, including a simplified employee pension plan, is exempt from attachment, execution, and seizure for the satisfaction of debts unless the plan, contract, or account does not qualify under the applicable provisions of the Internal Revenue Code of 1986."

3. Marilyn's Boellner's right to the assets held in or to receive payments, whether vested or not, under the Dillard's Federal Credit Union Individual Retirement Account of Marilyn Boellner is exempt from attachment, garnishment, and execution under the provisions of Ark.Code Ann. § 16–66–220; and good cause appearing;

It is therefore ORDERED, ADJUDGED, AND DECREED that [Appellants]' Motion to Declare Ark.Code Ann. § 16–66–220 Unconstitutional is denied.

It is therefore ORDERED, ADJUDGED, AND DECREED that Marilyn Boellner's right to assets held in or to receive payments, whether vested or not, from an IRA held under or by Dillard's Federal Credit Union is exempt from attachment, execution, and seizure for the satisfaction of the judgment of July 21, 2009.

The circuit court also quashed the writ of garnishment issued to Dillard's Federal Credit Union.

On appeal, the appellants contest the constitutionality of section 16–66–220(a)(1). The Boellners first contend, however, that the appellants' challenge to

section 16–66–220(a)(1) is barred by the law-of-the-case doctrine. In *Boellner I*, this court refused to reach the merits of the appellants' challenge to the same statute because they failed to get a written order from the circuit court on that issue as it related to an IRA owned by Samuel Boellner. *Boellner I*, 2011 Ark. 83, at 23, 378 S.W.3d 745. The Boellners now claim that our refusal equates to a decision on the issue and law of the case applies. We disagree.

The doctrine of law of the case prohibits a court from reconsidering issues of law and fact that have already been decided in a prior appeal. *Jones v. Double "D" Props., Inc.*, 357 Ark. 148, 156, 161 S.W.3d 839, 844 (2004). The doctrine provides that a decision of an appellate court establishes the law of the case for the trial upon remand and for the appellate court itself upon subsequent review. *Id.* The doctrine serves to effectuate efficiency and finality in the judicial process, and its purpose is to maintain consistency and avoid reconsideration of matters once decided during the course of a single, continuing lawsuit. *Id.* The law-of-the-case doctrine specifically provides that in a second appeal, the decision of the first appeal is conclusive of every question of law or fact decided in the former appeal and also of those questions that might have been, but were not, presented. *Clemmons v. Office of Child Support Enforcement*, 345 Ark. 330, 346, 47 S.W.3d 227, 237 (2001).

The Boellners specifically rely on this court's decision in *Pro–Comp Management, Inc. v. R.K. Enterprises, LLC*, 372 Ark. 190, 272 S.W.3d 91 (2008) (*R.K. III*), as support for their contention that the issue of the constitutionality of the IRA-exemption statute is barred by the law-of-the-case doctrine. Although there were several issues at play in the *R.K.* cases, the one that is instructive for this court for present purposes is the decision regarding attorney's fees.

In 2006, this court decided the second *R.K.* case. *See Pro–Comp Mgmt., Inc. v. R.K. Enters., LLC*, 366 Ark. 463, 237 S.W.3d 20 (2006) (*R.K. II*). In that decision, we refused to reach appellant TRS's contention that the circuit court erred in failing to award attorney's fees. *Id.* at 469, 237 S.W.3d at 25. The reason for our refusal was that the written order appealed from contained no reference to attorney's fees, and, as a result, there was no ruling on the issue by the circuit court. *Id.* at 469–70, 237 S.W.3d at 25.

Two years later, the same parties returned to this court, and TRS again contended that the circuit court erred in refusing to award attorney's fees. *See R.K. III*, 372 Ark. at 195, 272 S.W.3d at 95–96. This time, however, TRS had returned to the circuit court after remand and had obtained a written order denying the motion for attorney's fees. This court still refused to address the attorney's-fees issue because "the doctrines of res judicata and law of the case bar relitigation of an issue that has already been decided." *Id.* at 196, 272 S.W.3d at 96.

We find that the *R.K. III* case is not controlling for purposes of the instant appeal because the appellants in *R.K. III* sought to relitigate the same attorney's fees that this court had previously refused to address. As there is a different IRA account at issue in the present appeal, the appellants have presented facts that are materially different from the facts in *Boellner I*. For this reason, *R.K. III* is distinguishable. This court has held that the law of the case applies only when there is no material change in circumstances between the first and second appeals. *See, e.g., Weiss v. McFadden*, 360 Ark. 76, 199 S.W.3d 649 (2004) (finding law-of-the-case doctrine applied where there was no

change in facts regarding the respective retirees and pensions affected); *Jones,* 357 Ark. 148, 161 S.W.3d 839 (law-of-the-case doctrine applied where the wife raised an illegal-exaction claim that was the same as an illegal-exaction claim raised by her husband in the first appeal); *Barnhart v. City of Fayetteville,* 335 Ark. 57, 977 S.W.2d 225 (1998) (law of the case applied where appellant attempted to refashion her illegal-exaction claim as a claim for breach of contract after the first appeal in order to seek additional attorney's fees).

■ In the instant case, the appellants garnished a different IRA account—one owned by Marilyn Boellner—following the first appeal. In *Boellner I,* the IRA account that was garnished was that of Samuel Boellner. The law-of-the-case doctrine does not apply if the evidence materially varies between the two appeals. *Scamardo v. Sparks Reg'l Med. Ctr.,* 375 Ark. 300, 306, 289 S.W.3d 903, 907 (2008). We cannot say, based on the record before us, that the circumstances surrounding the two IRA accounts were substantially similar. Because now there is a different IRA and a different owner involved, we find that the evidence in the instant appeal materially varies from the evidence before this court in *Boellner I.* As a result, the law-of-the-case doctrine does not apply.

|₇We turn then to the merits of the case. The issue of whether section 16–66–220(a)(1) contravenes article 9, section 2 of the Arkansas Constitution requires this court to engage in statutory interpretation. It is axiomatic that this court reviews issues of statutory interpretation de novo because it is for this court to interpret what a statute means. *Mack v. Brazil, Adlong & Winningham, PLC,* 357 Ark. 1, 5, 159 S.W.3d 291, 294 (2004). This court is not bound by a circuit court's interpretation; however, in the absence of a showing that the circuit court erred, its interpreta-

tion will be accepted as correct on appeal. *Id.*

The issue in this case is whether Arkansas Code Annotated section 16–66–220(a)(1) is in irreconcilable conflict with article 9, section 2 of the Arkansas Constitution.

Arkansas Code Annotated section 16–66–220 provides, in relevant part:

A person's right to the assets held in or to receive payments, whether vested or not, under a pension, profit-sharing, or similar plan or contract, including a retirement plan for self-employed individuals, or under an individual retirement account or an individual retirement annuity, including a simplified employee pension plan, is exempt from attachment, execution, and seizure for the satisfaction of debts unless the plan, contract, or account does not qualify under the applicable provisions of the Internal Revenue Code of 1986.

Ark.Code Ann. § 16–66–220(a)(1) (Repl. 2005).

Article 9, section 2 of the Arkansas Constitution provides:

The personal property of any resident of this State, who is married or the head of a family, in specific articles to be selected by such resident, not exceeding in value the sum of five hundred dollars, in addition to his or her wearing apparel, and that of his or her family, shall be exempt from seizure on attachment, or sale on execution or other process from any court, on debt by contract.

Ark. Const. art. 9, § 2.

■ |₈The circuit court found that Marilyn Boellner's IRA is exempt from "attachment, garnishment, and execution under the provisions of Ark.Code Ann. § 16–66–220." The statute itself refers only to "attachment, execution, and seizure for the satisfaction of debts," and does not

explicitly refer to garnishment. See Ark. Code Ann. § 16–66–220(a)(1). Generally, the rules of statutory construction do not permit this court to read into a statute words that are not there. *McMillan v. Live Nation Entm't, Inc.,* 2012 Ark. 166, at 6, 401 S.W.3d 473, 476–77. We have recognized, however, that garnishment is an attachment of the debt or a form of levy on the debt. *Thompson v. Bank of Am.,* 356 Ark. 576, 585–86, 157 S.W.3d 174, 180 (2004); *see also Allen v. Stracener,* 214 Ark. 688, 691, 217 S.W.2d 620, 621–22 (1949) ("It follows that judicial garnishment before judgment must fit into our jurisprudence in its true form, as a species of attachment, and as such it is subject to the restrictions applicable to the broader remedy."). Because garnishment is closely related to attachment and is a seizure or levy on the debt, the circuit court's finding that the IRA-exemption statute applies to garnishment proceedings is not in error.

■ The appellants contend that the IRA-exemption statute contravenes the plain language of the Arkansas Constitution by providing for limitless exemptions for IRAs. They concede, however, that this court has never held that article 9, section 2 of the Arkansas Constitution serves as a maximum cap on exemptions.

■ This court has held that "the exemption clause of the Constitution is highly remedial, and should be liberally construed." *Pemberton v. Bank of E. Ark.,* 173 Ark. 949, 952, 294 S.W. 64, 65 (1927). This court has also repeatedly held that the constitution of this state is not a grant but a limitation of power, and, unless the power of the General Assembly is limited, either expressly or by necessary implication, its power is supreme. *Bd. of Comm'rs of Red River Bridge Dist. v. Wood,* 183 Ark. 1082, 1088, 40 S.W.2d 435, 437 (1931). A statute passed by the General Assembly will al-

ways be upheld, unless it is clearly prohibited by the constitution. *Id.* Courts must assume that legislative discretion has been properly exercised. *Id.*

The appellants point this court to *In re Holt,* 84 B.R. 991 (Bankr.W.D.Ark.1988) *aff'd,* 97 B.R. 997 (W.D.Ark.1988) *aff'd,* 894 F.2d 1005 (8th Cir.1990), as support for their position. They maintain that in *Holt,* the bankruptcy court held that Arkansas Code Annotated section 16–66–209 was in conflict with article 9, section 2 of the Arkansas Constitution to the extent that the statute exempted personal property in excess of $500. Extending the *Holt* analysis to the present facts, which would involve a non-bankruptcy matter, would be an error. In analyzing Arkansas Code Annotated section 16–66–209, the bankruptcy court began "with an examination of Arkansas's bankruptcy exemption statutes, enacted in 1981 and codified at A.C.A. §§ 16–66–217 and 16–66–218. A.C.A. § 16–66–217," which provides "that '[t]he applicable exemptions [are] to be *those [exemptions] permitted by the constitution* and the laws of the State of Arkansas.'" *Id.* at 1003 (emphasis added). The court hinged its decision regarding the constitutionality of section 16–66–209 on the fact that the Bankruptcy Code limited bankruptcy debtors to the exemption amount permitted by the Arkansas Constitution. That same restriction does not apply where non-bankruptcy debtors, such as the Boellners, are concerned.

The issue of personal property that is exempt from execution or garnishment in a non-bankruptcy context has come before this court only sporadically. In 1918, this court addressed the issue of whether funds in the hands of a fraternal benefit society, which were held for the benefit of the spouse of a deceased society member, were subject to garnishment to satisfy the debt of the member. *Acree v. Whitley,* 136

Ark. 149, 206 S.W. 137 (1918). In *Acree,* the insured, Jessie Thomas Acree, died while a member in good standing of the Supreme Tribe of Ben Hur, undisputedly a fraternal benefit society. The circuit court subsequently ordered that Whitley could garnish the funds held by the Supreme Tribe of Ben Hur in order to satisfy a judgment against Acree's husband. This court reversed, finding that the Arkansas Code provided the following exemption to funds held by fraternal benefit societies:

> No money or other benefit, charity, relief, or aid to be paid, provided, or rendered by any such society, shall be liable to attachment, garnishment, or other process, or to be seized, taken, appropriated, or applied by any legal or equitable process or operation of law to pay any debt or liability of a member or beneficiary, or any other person who may have a right thereunder, either before or after payment.

*Id.* at 153, 206 S.W. at 138; *see also* Ark. Code Ann. § 23–74–403.

In discussing the statutory exemption from attachment and garnishment for funds held by fraternal benefit societies, this court said, "It may be stated at the outset that [the Code] does not relate to the absolute exemption of personal property allowed a resident of this state as exempt from certain debts and liabilities under sections 1 and 2 of article 9 of our Constitution." *Acree,* 136 Ark. at 153, 206 S.W. at 138. This court determined that the exemption statute was not enacted for the purpose of allowing beneficiaries total exemptions of personal property which they are not entitled to under the constitution but, instead, for the limited purpose of

exempting these specific benefits of a fraternal society from the operation of general garnishment statutes.

In the same vein, this court upheld the exemption of certain insurance benefits from garnishment. *See W.B. Worthen Co. v. Thomas,* 188 Ark. 249, 65 S.W.2d 917 (1933) *rev'd,* 292 U.S. 426, 54 S.Ct. 816, 78 L.Ed. 1344 (1934).[1] In that case, a writ of garnishment was issued to the Missouri State Life Insurance Company after W.B. Worthen Co. obtained a judgment against Ralph Thomas and Mrs. W.D. Thomas. At issue was the constitutionality of Act 102 of 1933, which provided, in relevant part:

> All moneys paid or payable to any resident of this state as the insured or beneficiary designated under any insurance policy or policies providing for the payment of life, sick, accident and/or disability benefits shall be exempt from liability or seizure under judicial process of any court, and shall not be subjected to the payment of any debt by contract or otherwise by any writ, order, judgment, or decree of any court, provided, that the validity of any sale, assignment, mortgage, pledge or hypothecation of any policy of insurance or if any avails, proceeds or benefits thereof, now made, or hereafter made, shall in no way be affected by the provisions of this act.

*Id.* at 250–51, 65 S.W.2d at 917. Citing *Acree,* this court held that the Act did not violate article 9, section 2, of the Arkansas Constitution because it did not relate to the absolute exemption of personal property but, instead, exempted certain insurance benefits from the operation of general gar-

---

1. *Worthen* was reversed by the Supreme Court of the United States on the grounds that applying the exemption in Act 102 of 1933 to debts that accrued before the Act was passed constituted a violation of the contract clause found in Article 1, Section 10 of the United States Constitution. *W.B. Worthen v. Thomas,* 292 U.S. 426, 431, 54 S.Ct. 816, 78 L.Ed. 1344 (1934).

nishment statutes. *Id.* at 253, 65 S.W.2d at 918.

The appellants, nevertheless, point to a decision in which the Minnesota Supreme Court held that an unlimited exemption for IRA accounts violated that state's constitution. *See Estate of Jones v. Kvamme,* 529 N.W.2d 335 (Minn.1995). Despite appellants' contention to the contrary, the Minnesota constitutional provision addressed in that case is substantially different from the Arkansas constitutional provision facing this court. The Minnesota Constitution provides: "A reasonable amount of property shall be exempt from seizure or sale for the payment of any debt or liability. The amount of such exemption shall be determined by law." *Id.* at 337. The Minnesota courts have discussed the meaning of "reasonable amount" as follows: "If an exemption has no limit of any kind, then it is unconstitutional. On the other hand, an exemption with a dollar, an objective, or a statutory 'to the extent reasonably necessary' limit is a proper legislative determination of reasonableness." *Id.* at 337. The statute addressed in *Estate of Jones* contained an exemption for IRAs that had no discernible limit. As a result, the Minnesota court held that statute unconstitutional.

It is clear to this court that the exemption statute at issue in *Estate of Jones* is similar to the one at issue in the instant case. However, the constitutional provisions in Minnesota and Arkansas are vastly different. As a result, *Estate of Jones* provides no guidance to this court in answering the question at hand.

In sum, *Acree* and *Worthen* stand for the proposition that as long as the exemption at issue is not an absolute exemption of all personal property, but instead relates only to exempting certain funds from general garnishment statutes, then the exemption does not violate article 9, section 2

of the Arkansas Constitution. Section 16–66–220(a)(1) exempts only a certain type of fund from garnishment. We hold that the IRA exemption provided in section 16–66–220(a)(1) is not an absolute exemption of all personal property, and, as such, does not offend article 9, section 2 of the Arkansas Constitution.

Affirmed.