Cite as 2014 Ark. 543

# SUPREME COURT OF ARKANSAS

No. CV-13-919

| | |
|---|---|
| JOHN K. KELLY<br><div align="right">APPELLANT</div> | **Opinion Delivered** December 22, 2014 |
| V. | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60DR-06-100] |
| CHRISTIAN SNOWDEN KELLY<br><div align="right">APPELLEE</div> | HONORABLE MACKIE M. PIERCE, JUDGE |
| | <u>AFFIRMED ON DIRECT APPEAL; CROSS-APPEAL MOOT</u>. |

**PAUL E. DANIELSON, Associate Justice**

Appellant John ("John") Kelly appeals from the final order and decree of divorce from appellee Christian Snowden Kelly ("Christy") that was entered by the Pulaski County Circuit Court. John had appealed from a prior order of that court, and we reversed and remanded the matter. *See Kelly v. Kelly*, 2011 Ark. 259, 381 S.W.3d 817 (*Kelly I*). In the instant appeal, John raises four assertions of error by the circuit court: (1) that it erred in denying his motion to strike or bar evidence relating to the unequal distribution of certain stock; (2) that it erred in failing to equitably distribute the stock; (3) that it lacked jurisdiction to examine or alter the circuit court's prior ruling on the deficiency from the sale of the marital home; and (4) that it abused its discretion in granting Christy's motion for leave to deposit alimony owed to him into the registry of the court. Christy's father, David Snowden, Sr. ("Mr. Snowden") cross-appeals from the circuit court's order, which denied his motion to intervene in the

SLIP OPINION

matter, but only if this court fails to affirm the court's order on direct appeal. We affirm the circuit court's order on direct appeal and find the cross–appeal moot.

In the prior appeal, John had argued that the circuit court had erred in finding that certain stock from Tarco Roofing Materials, Inc. ("TRM stock") was nonmarital property and in finding him liable for half of the deficiency that resulted from the sale of the marital home. *See Kelly I*, 2011 Ark. 259, 381 S.W.3d 817. We agreed that the stock was marital property and reversed and remanded the circuit court's order. *See id.* We further declined to address John's argument relating to the marital-home deficiency in light of our reversal and remand "for further proceedings relating to the division of property." *Id.* at 9, 381 S.W.3d at 824.

On remand to the circuit court, a flurry of motions was filed by both John and Christy. In addition, Christy's father sought to intervene in the litigation "to pursue an action for rescission of the [TRM] stock he intended to gift to [Christy]." A hearing was held on the motions pending, and on June 19, 2013, the circuit court's final order and decree of divorce was filed. In its order, the circuit court found that Christy was entitled to an award of all the TRM stock "as an unequal distribution pursuant to Ark. Code Ann. § 9-12-315(a)(1)." It further found that neither Christy nor John was entitled to employ self-help measures in solving their difficulties relating to alimony owed by Christy to John and the one-half deficiency resulting from the sale of the marital home owed by John to Christy. To that end, the circuit court ordered both Christy and John to pay any sums owed the other within thirty days. In addition, the circuit court denied Mr. Snowden's intervention motion. John then

SLIP OPINION

filed a motion for reconsideration, which was deemed denied. John and Mr. Snowden now appeal.

## I. *Law of the Case*

For his first point on appeal, John argues that the circuit court erred in denying his motion to preclude any argument by Christy for an unequal distribution of the TRM stock. He contends that the doctrine of law of the case barred her from making such an argument, because she did not advance that argument until remand. He further maintains that, in order to argue for an unequal division at this time, Christy was required to advance the argument as an alternative one prior to this court's remand. Christy responds that because the circuit court's original ruling that the TRM stock was nonmarital was in her favor, she had no basis for arguing at that time for an unequal distribution of marital property. She contends that it was only after remand that the circuit court was faced with distributing the stock as marital property; therefore, it was at that time, she claims, that she was entitled to present her unequal–distribution argument.

Christy is correct. The doctrine of law of the case prohibits a court from reconsidering issues of law and fact that have already been decided in a prior appeal. *See Clinical Study Ctrs., Inc. v. Boellner*, 2012 Ark. 266, 411 S.W.3d 695. The doctrine provides that a decision of an appellate court establishes the law of the case for the trial upon remand and for the appellate court itself upon subsequent review. *See id.* The doctrine serves to effectuate efficiency and finality in the judicial process, and its purpose is to maintain consistency and avoid reconsideration of matters once decided during the course of a single, continuing lawsuit. *See*

*id.* The law-of-the-case doctrine specifically provides that in a second appeal, the decision of the first appeal is conclusive of every question of law or fact decided in the former appeal and also of those questions that might have been, but were not, presented. *See id.*

John contends that, despite the circuit court's ruling in Christy's favor on the nature of the stock, she was required to assert before the circuit court, and on appeal in *Kelly I*, her position that, if marital, an unequal distribution should be made. However, we have previously rejected such a notion.

In *Landers v. Jameson*, 355 Ark. 163, 132 S.W.3d 741 (2003), this court observed:

> It is true that this court has said time and again that all issues raised or that could have been raised in a first appeal cannot be raised in a second appeal. But this court has never extended the doctrine [of law of the case] to require a prevailing party at the trial level to also obtain a ruling on a constitutional issue that may be an alternative reason to decide the matter in that party's favor. Nor has this court required that same prevailing party to cross appeal as an *appellee* on that same non-essential constitutional ground, if and when the matter is appealed to an appellate court.

355 Ark. at 173, 132 S.W.3d at 748. *See also N.D. v. State*, 2012 Ark. 265, 411 S.W.3d 205 (citing *Landers*). Prior to the remand, Christy had argued that the TRM stock was nonmarital property, and the circuit court agreed. *See Kelly I*, 2011 Ark. 259, 381 S.W.3d 817. Christy therefore would be considered the prevailing party before the circuit court on the stock issue; indeed, John appealed the circuit court's ruling on the matter in *Kelly I*.

Pursuant to *Landers*, Christy, as the prevailing party on the issue of the TRM stock, was not required to assert alternatively to the circuit court or this court that were the stock marital, an unequal distribution should be made. We therefore hold that Christy was not



barred by the law-of-the-case doctrine from seeking an unequal distribution after our holding in *Kelly I* that the stock was marital property.

## II. *Inequitable Distribution*

John next asserts that the circuit court erred in failing to equitably distribute the stock. He contends that if the circuit court was going to consider an unequal distribution, it was obliged to receive current testimony and evidence on factors such as the financial status of the parties, the current fair-market value of the stock, and the amount of income Christy had received from the stock during the course of the divorce. He further avers that the circuit court erred in its unequal distribution of the stock because it made no findings on which it based its decision. Christy responds that there was a fully developed record in the matter that contained ample evidence to allow the circuit court to conduct a full inquiry into the factors required to be considered when making an unequal division and to support the circuit court's decision.

We review division-of-marital-property cases de novo; even though we do so, we will not reverse the circuit court's findings of fact unless they are clearly erroneous, or against the preponderance of the evidence. *See Hernandez v. Hernandez*, 371 Ark. 323, 265 S.W.3d 746 (2007). The division of property itself is also reviewed, and the same standard applies. *See id.* A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been made. *See id.* In order to demonstrate that the circuit court's ruling was erroneous, the appellant must show that the

circuit court abused its discretion by making a decision that was arbitrary or groundless. *See id.*

We turn first to John's argument that the circuit court's unequal distribution of the stocks was erroneous because the circuit court failed to hear current testimony and evidence. Our review of the record reflects that this argument was not raised to the circuit court until John's motion for reconsideration. Moreover, it is inconsistent with his position taken prior to the circuit court's ruling now on appeal.

Subsequent to this court's decision in *Kelly I* and the assignment of the case to another circuit court after the recusal of the original trial judge, John did, in fact, ask the court to "set a pretrial conference in this case where you could get up to speed on the case; perhaps rule on some of the pending motions and set this matter for a final hearing."[1] That said, about one and one-half months later, John stated the following in his reply to Christy's response to his motion to bar her from seeking an unequal distribution of the TRM stock:

> Likewise, the Mandate in this case did not direct the trial court to hold a hearing and receive new evidence on unequal distribution of property. . . .
>
> During the original hearing of this matter, testimony was offered by the parties concerning the value of the TRM stock. Excerpts from the trial transcript and exhibits (attached as Exhibits A through E) constitutes the extent of the evidence as to the value of the stock—which was $7,451,836.00. If this Court decides that it is consistent with the Mandate [in *Kelly I*] to engage in unequal distribution and to award Christy 100% of the TRM stock, then John should be given a judgment for half of the stock value determined by the trial evidence along with half of the TRM distributions to Christy since the divorce was filed. *See*, ACA § 9-12-315(a)(4) and ACA § 9-12-

---

[1]We simply cannot construe John's statement as a request to take or present new testimony or evidence.

315(a)(1)(A).  If this Court decides that it is inconsistent with the Mandate to engage in unequal distribution, then John should be awarded half the stock and half the distributions to Christy since the divorce was filed.

This court has stated that an issue must be presented to the circuit court at the earliest opportunity in order to preserve it for appeal.  *See, e.g.*, *LaFont v. Mooney Mixon*, 2010 Ark. 450, 374 S.W.3d 668.  Stated another way, a party may not wait until the outcome of a case to bring an error to the circuit court's attention.  *See id.*  Here, John not only waited until after the outcome of the case to demand a hearing, he also specifically claimed that one was not even necessary; that is, until after the circuit court's decision.  We therefore decline to address the merits of his argument.  *See, e.g.*, *Switzer v. Shelter Mut. Ins. Co.*, 362 Ark. 419, 208 S.W.3d 792 (2005).

John next takes issue with what he terms the circuit court's failure to "give a valid basis and reason" for the unequal distribution of the TRM stock.  At the time a divorce decree is entered, all marital property is to be distributed one-half to each party, unless the court finds such a division to be inequitable.  *See* Ark. Code Ann. § 9-12-315(a)(1)(A) (Repl. 2009).  In that event, the court is to make some other division that the court deems equitable, taking into consideration several factors: the length of the marriage; age, health, and station in life of the parties; occupation of the parties; amount and sources of income; vocational skills; employability; estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income; contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and the federal income tax consequences of the court's division of property.  *See id.*  When property is divided

SLIP OPINION

pursuant to the foregoing considerations, the circuit court must state its basis and reasons for not dividing the marital property equally between the parties, and the basis and reasons should be recited in the circuit court's order. *See* Ark. Code Ann. § 9-12-315(a)(1)(B).

Here, the circuit court specifically stated that Christy was entitled to an award of "all of the TRM stock as an unequal distribution" under the division-of-property statute and that the award was "equitable and warranted under the facts of this case, as well as the distribution made to . . . John . . . of other marital property and the awarding of alimony." We cannot say that the circuit court's explanation is inadequate or insufficient. While the circuit court must consider the factors set forth in the statute and state its reasons for dividing property unequally, it is not required to list each factor in its order or to weigh all the factors equally. *See, e.g.*, *Hernandez*, 371 Ark. 323, 265 S.W.3d 746; *Bamburg v. Bamburg*, 2011 Ark. App. 546, 386 S.W.3d 31. Furthermore, the specific enumeration of the factors within the statute does not preclude a circuit court from considering other relevant factors, where exclusion of other factors would lead to absurd results or deny the intent of the legislature to allow for the equitable division of property. *See Brown v. Brown*, 373 Ark. 333, 284 S.W.3d 17 (2008). The statute requires the circuit court to explain its reasons for not dividing the marital property equally, and the circuit court did just that.

We are further unable to say that the circuit court erred in its distribution of the TRM stock to Christy. This court has consistently interpreted section 9-12-315(a) to grant the circuit court broad powers in distributing both nonmarital and marital property to achieve an equitable division. *See Farrell v. Farrell*, 365 Ark. 465, 231 S.W.3d 619 (2006). Our

property-division statute does not compel mathematical precision in the distribution of property; its overriding purpose is to enable the court to make a division that is fair and equitable under the circumstances. *See Jones v. Jones*, 2014 Ark. 96, 432 S.W.3d 36; *Box v. Box*, 312 Ark. 550, 851 S.W.2d 437 (1993).

As already set forth, the circuit court premised its distribution of the TRM stock to Christy on the prior distribution of marital property and award of alimony to John, which included a lake house "as an unequal distribution"; a 1999 Tahoe "as an unequal division of property," in addition to his respective vehicle; several bank and investment accounts, two of which were part of an unequal division to give John "a significant sum to fund any expenses or retirement plans"; and alimony in the amount of $5,000 per month for ten years, "[d]ue to the disproportionate earnings and earning potential between the parties and the testimony that the parties' very comfortable lifestyle was attributable to [Christy]'s income." As evidenced quite clearly by the circuit court's orders, John previously received himself an unequal division of the parties' real and personal property to "allow him to fund a 'realistic' retirement plan and provide for his anticipated expenses."

The property-division statute simply requires that marital property be distributed equitably. *See Jones*, 2014 Ark. 96, 432 S.W.3d 36. That the circuit court on remand found it appropriate to award the TRM stock to Christy as an unequal distribution following the previous unequal award in John's favor fails to leave this court with a definite and firm conviction that a mistake was made; nor has John demonstrated error by showing that the circuit court's decision was arbitrary or groundless. As we have previously explained, we will

9

not substitute our judgment on appeal as to the exact interest each party should have, but will decide only whether the order is clearly wrong. *See Pinkston v. Pinkston*, 278 Ark. 233, 644 S.W.2d 930 (1983). Any exception to the rule of equal distribution will always depend on the specific facts as reflected by the circuit court's findings and conclusions. *See Gentry v. Gentry*, 282 Ark. 413, 668 S.W.2d 947 (1984). Given our standard of review, we must affirm the circuit court's award of the TRM stock to Christy as an unequal division of property.

### III. *Marital-Home Deficiency*

John next contends that, because this court did not address his contention in *Kelly I* relating to the circuit court's equal division of the deficiency following the sale of the marital home, the debt-on-the-marital-home issue "was placed in appellate limbo" and was not part of this court's mandate in *Kelly I*. He urges that our remand was limited solely to the stock issue and, thus, the circuit court had no jurisdiction to order him to pay his portion of the marital-home deficiency within thirty days. John further claims that even if the circuit court had the jurisdiction to do so, the circuit court should have taken into consideration John's ability to pay the amount claimed due.

John's assertion that the marital-home deficiency was left in appellate limbo is, quite simply put, mistaken. The division of property necessarily entails consideration of both the assets *and* the debts, as was explained in our citations to authority in the original appeal. *See Kelly I*, 2011 Ark. 259, 381 S.W.3d 817 (citing *Hackett v. Hackett*, 278 Ark. 82, 643 S.W.2d 560 (1982); *Gilliam v. Gilliam*, 2010 Ark. App. 137, 374 S.W.3d 108; *Boxley v. Boxley*, 77 Ark. App. 136, 73 S.W.3d 19 (2002)). Here, the circuit court did not reapportion the liability

of the parties relating to the deficiency, but its order did direct that both John and Christy had "thirty (30) days to pay any sums owed the other party for alimony or in satisfaction of any deficiency." Because the circuit court was required to reexamine the division of property pursuant to this court's mandate, it was entitled to also consider the division of debts, including the deficiency of the marital home. While John further claims that the circuit court should have considered his ability to pay any amount due before directing the payment thereof, he cites to no authority for his proposition. That is sufficient reason not to address his ability-to-pay claim. *See, e.g., Ginsburg v. Ginsburg*, 359 Ark. 226, 195 S.W.3d 898 (2004). We hold that our mandate in *Kelly I* did not preclude the circuit court from addressing the deficiency on the marital home; therefore, we find no merit to John's argument relating to the deficiency.

## IV. *Court's Registry*

For his final point on appeal, John urges that the circuit court abused its discretion in permitting Christy to deposit alimony payments she owed him into the court's registry. The thrust of his argument appears to be that permitting her to do so was somehow unfair because she had previously sought a setoff of amounts she claimed were due from him to her, and her request was denied.

The record before us reveals that following the filing of the circuit court's order on June 19, 2013, Christy filed a motion for leave to deposit funds into the registry of the court. In her motion, Christy admitted that she owed accrued alimony to John and stated her desire to tender the amount owed—$245,000—immediately into the registry of the court. She

SLIP OPINION

further sought permission to submit monthly payments for remaining alimony payments due and stated her intention to petition the court "to reduce any remaining unpaid balance on the deficiency owed by John to her from the sale of the marital home to a judgment, and order a set off from this amount against the funds she has deposited [in]to the registry of the court." Over John's objections, the circuit court entered an order granting Christy's motion to deposit funds and ordered the clerk to accept and hold any funds deposited until further order of the court. While John takes issue with the circuit court's order permitting Christy to do so, he has yet again failed to cite this court to any convincing authority in support of his proposition that the circuit court erred. The failure to cite authority is sufficient reason to affirm the circuit court's ruling on this point. *See Nielsen v. Berger-Nielsen*, 347 Ark. 996, 69 S.W.3d 414 (2002).

For the foregoing reasons, we affirm the circuit court. Because we do so, Mr. Snowden's conditional cross-appeal is rendered moot.

Affirmed on direct appeal; cross-appeal moot.

HART, J., and Special Justices AMY GRIMES and JODI L. STROTHER dissent.

BAKER and HOOFMAN, JJ., not participating.

**JOSEPHINE LINKER HART, Justice, dissenting.** In a prior opinion, *Kelly v. Kelly*, 2011 Ark. 259, 381 S.W.3d 817, (*Kelly I*) handed down on June 16, 2011, this court reversed and remanded the circuit court's finding that stock in a closely held corporation, Tarco Roofing Materials (TRM), was not marital property. All of the other marital property had been divided and alimony had been awarded. Only the status of the TRM stock was

appealed. Accordingly, those awards were law of the case and not subject to being revisited by the circuit court. *Clemmons v. Office of Child Support Enforcement*, 345 Ark. 330, 47 S.W.3d 227 (2001). The doctrine prevents an issue already decided from being raised in a subsequent appeal unless the evidence materially varies between the two appeals. *Id.* The law-of-the-case doctrine extends to issues that could have been appealed and were not. *SEECO, Inc. v. Hales*, 334 Ark. 307, 973 S.W.2d 818 (1998).

Upon remand, without holding an evidentiary hearing, the circuit court simply made what it called an "equitable," uneven distribution, asserting that "the Court does *not* find that any drastic step is necessary or equitable in light of the record before this Court as with any division of marital property, it is inherent in the Court's equitable powers that the division of marital property in whole or in part in fact may be unequal." The circuit court's ruling is wrong.

First, the circuit court has no "inherent" power to make an unequal distribution of marital property. The distribution of marital property is governed by statute, Arkansas Code Annotated section 9-12-315, appropriately titled, "Property distribution." It states in pertinent part:

(a) At the time a divorce decree is entered:

(1)(A) All marital property shall be distributed one-half ( ½ ) to each party unless the court finds such a division to be inequitable. In that event the court shall make some other division that the court deems equitable taking into consideration:

(i) The length of the marriage;

(ii) Age, health, and station in life of the parties;

SLIP OPINION

(iii) Occupation of the parties;

(iv) Amount and sources of income;

(v) Vocational skills;

(vi) Employability;

(vii) Estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income;

(viii) Contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and

(ix) The federal income tax consequences of the court's division of property.

(B) When property is divided pursuant to the foregoing considerations the court must state its basis and reasons for not dividing the marital property equally between the parties, and the basis and reasons should be recited in the order entered in the matter;

(2) All other property shall be returned to the party who owned it prior to the marriage unless the court shall make some other division that the court deems equitable taking into consideration those factors enumerated in subdivision (a)(1) of this section, in which event the court must state in writing its basis and reasons for not returning the property to the party who owned it at the time of the marriage.

Section 9–12–315(a)(1)(A) specifies that marital property shall be equally divided unless, guided by considerations enumerated in the statute, equity requires an unequal distribution. The statute also requires that if the circuit court makes an unequal distribution, the court is to specify its reasons in its written order. The circuit court did not make the required findings to support an unequal distribution of marital property, and almost certainly, if it had followed the statute, it could not justify such an unequal distribution.

SLIP OPINION

A review of this matter demands an analysis of the fully developed record before us with regard to the statutory factors.

(i) The length of the marriage:  The parties married in 1982, so at the time the divorce was entered, they had been married 26 years, a marriage of long duration.

(ii) Age, health, and station in life of the parties: Both parties were middle-aged; Christian takes an antidepressant, but otherwise reports her health as excellent.

(iii) Occupation of the parties:  John works as an investment advisor, a good white-collar job where his income hovers around $100,000 per year.  Christian dabbles in interior decorating, but does earn an income in her part-time pursuit.  Apparently, she has the ability to earn substantially more.

(iv) Amount and sources of income: John has the above-referenced wages, while Christian receives distributions from stock in the amount of $16,000 per month as well as family largess, like her current residence, a $1 million home that was provided by her father.

(v) Vocational skills:  John is a certified investment counselor; Christian has a degree in data processing and experience as an interior decorator.

(vi) Employability: Both John and Christian are employed.

(vii) Estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income:  Christian benefitted and will continue to benefit from family money.  John is not similarly situated.

(viii) Contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker: During the marriage John paid the living

15

SLIP OPINION

expenses and Christian paid for the life-style enhancement. In *Kelly I*, this court found that the TRM stock was marital property acquired during the marriage.[2] It is law of the case that acquisition of the stock depended on the satisfaction of a marital obligation to pay for it.

(ix) The federal income tax consequences of the court's division of property: There does not appear to be any tax consequences in an equal division of the TRM stock.

---

[2]The explanation in *Kelly I* is as follows:

Here, it is undisputed that Christy acquired her shares in TRM during the marriage, and the record reveals that Christy acquired the TRM stock after her father decided, for business reasons, to establish another business entity in the northeast. The stock for the new company was issued solely in the names of Christy and her brother, David, Jr., and the TRM books reflected a shareholder receivable from Christy for $22,500 and $27,500 for David, Jr. We have explained that a property's status "does not depend upon when the property is received, but rather depends upon when the right of the property is acquired." Thus, to the extent that either spouse acquires an enforceable right during the marriage, they acquire marital property.

The record before us makes clear that Christy acquired an enforceable right when she acquired her shares of TRM stock during her marriage; therefore, the stock is marital property unless it falls within one of the exceptions set forth in section 9-12-315(b). Christy claims that the stock does fall within one of the statutory exceptions. Specifically, she asserts that the circuit court correctly found that her father gifted her a business opportunity, rendering her stock in that business nonmarital property. However, this court has not previously recognized the gift of a business opportunity, nor will we do so now.

Neither do we consider the stock a gift. A gift is a voluntary transfer of property, without valuable consideration, to another. In the instant case, it is not disputed that a note receivable for Christy's shares was on the TRM books. While Christy also contends that the payment of that note with nonmarital funds rendered the stock nonmarital under section 9-12-315(b)(2) and (7), her contention is without merit. Christy's stock was not acquired in exchange for nonmarital property or income; instead, at the time it was acquired, it was exchanged for a note receivable. Because we conclude that the circuit court clearly erred in finding that the TRM stock was nonmarital property, we must reverse the circuit court's order and remand.

2011 Ark. 259, at 7–8, 381 S.W.3d at 823–24 (internal citations omitted).

The only factor that appears to weigh in favor of an unequal division of the TRM stock in Christian's favor is the fact that Christian satisfied the $22,500 indebtedness on the stock out of nonmarital funds. However, even here it was John's wages that paid the parties' day-to-day expenses, which freed up Christian's nonmarital funds to make the investment.

The circuit court was not free to disregard section 9-12-315. It is black-letter law that judicial discretion means:

> [D]iscretion bounded by rules and principles of law, and not arbitrary, capricious, or unrestrained. It is not the indulgence of judicial whim, but the exercise of judicial judgment, based on facts and guided by law or the equitable decision or what is just and proper under the circumstances. It is legal discretion to be exercised in discerning the course prescribed by law and is not to give effect to the will of the judge, but to that of the law. . . A liberty or privilege to decide what is fair and equitable under the peculiar circumstances of the particular case, guided by the spirit and principles of the law.

*Black's Law Dictionary* 323 (6th ed. 1990). The circuit court was bound in its exercise of judicial discretion to follow section 9-12-315. It clearly erred in failing to do so.

The circuit court also took up disputes between the parties concerning John's failure to tender his portion of the deficiency resulting from the sale of the marital residence and Christian's failure to pay alimony. The circuit court erred in deciding these issues as well. The circuit court acted wholly without authority in allowing Christian to deposit the alimony payments that she has withheld from John—nearly a quarter of a million dollars at the time the order was entered—while concomitantly requiring John to pay the deficiency resulting from the sale of the marital home. Release of those funds should be ordered forthwith.

I dissent.

Special Justices AMY GRIMES and JODI L. STROTHER join.

**AMY GRIMES, Special Justice, dissents.** I join in Justice Hart's dissent and agree that the court failed to properly analyze the nine factors set forth in A.C.A. section 9-12-315(a)(1)(A) in light of the facts. In failing to do so, the court erred in the property division in this matter. However, I write separately to express additional thoughts regarding the court's grant of Christy's motion to deposit alimony owed to John in the registry of the court.

In considering this matter, this court was asked to take judicial notice of *Farrell v. Farrell* 2014 Ark. App. 601 (2014). In that case, the Court of Appeals discussed its uncertainty about the nature of ordered alimony. The court questioned whether the payment of the alimony was payment of the wife's share of marital property or instead, payment of alimony to equalize an unequal distribution of the marital estate, *Id.* at 5. The court further noted that in determining the nature of alimony, one must look to the circumstances surrounding the award, *Id.*; *see also Snyder v. Snyder*, 13 Ark. App. 311, 683 S.W.2d 63(1985).

In the matter currently before this court, a review of the circumstances surrounding the award of alimony is clear. The award, here, is most certainly intended to equalize the very unequal distribution of marital property, including the TRM stock in favor of Christy. There is no question that John has been unable to pay the ordered deficiency judgment from the sale of the Edgehill property. The granting of Christy's motion would appear to be the result of some frustration on the part of the lower court for John's failure to pay his portion of the deficiency judgment. That said, it should be noted that despite Christy's much better financial position, she too has failed to keep current with ordered payments—the payment of alimony to John. The lower court denied Christy's motion for a "set off right" and that

denial was not appealed. Therefore, I question the need to deposit these dollars in the court's registry. If Christy has no set off right, then the deposit of the alimony with the court appears to merely be a mechanism for keeping monies from John. John was given some property as part of the distribution of marital property. Clearly, he was not given the value that Christy received in light of the ongoing nature of possible monetary distributions from the TRM stock. Since I feel that the alimony in this matter was intended to equalize the unequal division of marital property, including the TRM stock, it is my opinion that the court did indeed abuse its discretion in granting Christy's motion. Christy should not have been allowed to deposit the unpaid alimony dollars in the court's registry. The circuit court in considering Christy's motion, should have considered the reason for the award of alimony to John. Its failure to consider such reasons and to allow the unpaid alimony to continue to be withheld from John further compounds the lower court's failure to make equitable decisions regarding the division of marital property in this matter. Indeed, these monies should be ordered tendered to John forthwith.

Special Justice JODI L. STROTHER joins.

*Timothy O. Dudley*; and *Samuel A. Perroni*, for appellant.

*Cullen & Co., PLLC*, by: *Tim Cullen*; and *Shemin Law Firm, PLLC*, by: *Kenneth R. Shemin*, for appellee.